AHLQUIST et al. v. ALASKA–PORTLAND PACKERS' ASS'N..
No. 6022.

Circuit Court of Appeals, Ninth Circuit.
March 17, 1930.

H. W. Hutton, of San Francisco, Cal., and Lord & Moulton, of Portland, Or., for appellants.

Carey & Kerr, Omar C. Spencer, and David L. Davies, all of Portland, Or., for appellee.

Before RUDKIN, DIETRICH and WILBUR, Circuit Judges.

WILBUR, Circuit Judge.

Libelants claim the sum of $50.63 each, a total of $3,645.33, under a written agreement with the respondent Alaska-Portland Packers Association for the salmon fishing season of 1928 in Alaskan waters. The agreement referred to was attached to and made a part of the shipping articles, and each of the men signed the agreement. It is conceded that the agreement is several and not joint, and that under the terms of the agreement the amount claimed by the libelants is due. The controversy is solely over the question of whether or not the agreement was modified by an oral agreement wherein the respondent agreed to waive a provision of the written contract under which it was authorized to limit the amount of each day's catch of salmon, and the libelants agreed in consideration of that waiver to waive the provision of the contract under which the amounts now sought to be recovered were payable as an allowance to them upon fish purchased from outside fishermen. It is established by the evidence that such an agreement was effected between Mr. Daly, the superintendent of the respondent, thereto authorized by Mr. Warren, the president, and Mr. Mustonen, the delegate elected by the libelants, and authorized to represent them for certain purposes defined in the aforesaid written agreement. In view of this undisputed evidence, the sole question in the case is as to whether or not the delegate, Evert Mustonen, was authorized to make such an agreement on behalf of the libelants. The burden of proving such authority is upon the respondent. In view of the fact that the contract is several, this authority must proceed from each of the libelants. There is no direct evidence of any such authority.

Mustonen denies that there was any meeting at which he was authorized to make such an arrangement, and the testimony of such of the other libelants as were called as witnesses is to the effect that no meeting was held authorizing such change and that they did not authorize the change in the agreement made by Mustonen. The respondent states the problem thus:

"The simple question is whether under the facts and circumstances presented in this case, this body of men—about 70—unwieldly in number and many of them ignorant of the English language, could and did so arrange with their delegate that he would represent them."

There is testimony to the effect that it was therefore customary in dealing with the men to deal with them through their elected delegate. In that regard, Frank M. Warren, vice president of the respondent, testified as follows:

"Mr. Lord, the delegates that have been in Alaska have been business agents for those men every single year they have been up there, and they have transacted all the business for the men, and when there is any question or dispute, they have handled it, and there has never been one bit of question about it at any time. * * *

"We recognized the delegate as the man with whom we did the business—dealing with—and always have. Once in a while the delegate would bring a man over with him, when they couldn't reach a solution, he would then bring a man over with him, and the two of them would discuss it together occasionally. They had different methods of doing business. But the delegate was the man through whom the company dealt. If we wanted the men to go out and do work, we went to the delegate; if there was anything to be changed, we went to the delegate."

■ This evidence falls short of showing authority from the libelants to the delegate to change the terms of their written agreement. Whatever may have been the custom of the respondent in dealing with the other seamen and other fishermen on other occasions, and in other seasons, could not be binding upon the libelants who were not shown to have participated in similar dealings. It is sought also to bind the libelants to the parol agreement for the modification of their written contract made by Mr. Mustonen by the fact that they accepted the final payment tendered to them by the company without protest. The contract, however, expressly provides "that making any payment does not release the company from liability if such liability exists." Under the terms of the contract, therefore, there can be no implied agreement resulting from the fact that the men accepted the amount admitted to be due them. Unless there was an express agreement by the men at the time of receiving the payment that they waived the amount due under the contract, in view of this provision of the contract, they could not be held to have waived that which was justly due them in addition to that sum. The members of the two committees who dealt directly with the superintendent and the vice president of the respondent were undoubtedly bound by any agreement that they made. The first agreement made during the fishing season by the committee headed by Mustonen is the one principally relied upon by the respondent. Another agreement with a committee headed by Hankola, after the fishing season was over, was one waiving the libelants' claim in consideration of a waiver by the company of a claim it was making with relation to a charge against the libelants for labor performed by others which respondent claims should have been performed by the libelants under their contract. Only three of the libelants are shown by the evidence to have participated in these agreements, Mustonen, Hankola, and Emil Stur. The names of the others either have been forgotten or were unknown.

■ The libelants contend that such meetings as were held by the fishermen were not held, authorized, or conducted in accordance with union rules and that, therefore, Evert Mustonen, the delegate selected by the fishermen, who was also the delegate of the union, did not have the authority to make the agreement which he made. The respondent claims that the question of the union rules or regulations concerning meetings has no bearing upon the situation involved here, and we agree with respondent at least to the extent that if one or all of the men actually authorized Mustonen to make the agreement, which he made on their behalf, they would be bound by it, regardless of union rules with relation thereto, but the question here is whether or not the agreement made was authorized or ratified by the men who signed the contract.

■ It must be shown that they were aware of the agreement before their conduct can be construed as a ratification of previously unauthorized agreement. The evidence does not show such knowledge.

■■ The waiver by the company of its right to limit the daily catch of salmon did not give them such notice for this right was optional with the company, and the mere failure to exercise the option would not be evidence to them that this was the result of an agreement to waive its optional right, consequently it would not bring home to the men any knowledge of such an agreement. As to the later agreement with Hankola's committee, the waiver by the company of its claim for the payment of labor it employed to per-

form work which it claimed was required to be done by the libelants, it is true that all the libelants having received a statement of this charge, such of the libelants as sent a committee to secure its removal, would be bound by the agreement of the committee by which the removal was effected if and when they accepted the benefit of such an agreement. The difficulty with this defense is that there is no evidence to show what men, or group of men, authorized Hankola's committee to negotiate with the respondent. The record does show that about a dozen of the libelants attended such a meeting, but does not disclose their identity.

The libelants, other than Evert Mustonen, Emil Stur, and Joe Hankola, are entitled to recover for the reason that the respondent has not shown that their contract rights have been waived.

As to the libelants who made the agreements of waiver, Mustonen, Stur, and Hankola, it is necessary to dispose of another contention advanced by the libelants who claim that under the provision of the fishing and shipping agreement the superintendent had no authority to make this verbal agreement amending the contract. However, libelants are not in a position to take advantage of the lack of authority of Daly because Daly was expressly authorized by the president at the time to make the agreement.

The further contention that the shipping articles cannot be altered by a parol agreement is not well taken. In the absence of statutory inhibition, a written agreement may be altered by parol. Teal v. Bilby, 123 U. S. 572, 8 S. Ct. 239, 31 L. Ed. 263; Wakefield v. Supple, 82 Or. 595, 160 P. 376. This would certainly apply to the agreement in question, in so far as it was not required by law to be in writing. The agreement with reference to the compensation of the seamen and fishermen was not required to be in writing. We do not agree with the libelants' contention to the effect that the provision in the articles of agreement to subordinate that agreement to the law had the result of making applicable to the rights of the libelants the provisions of 46 USCA § 574 (Rev. St. § 4520), requiring vessels engaged in foreign trade to set forth in the shipping articles the agreement for compensation of the seamen.

We do not wish to be understood as passing upon the question of whether such shipping articles required by 46 USCA § 564 (section 4511 R. S.), can be amended by parol, for that question is not involved in this case.

The decree will be affirmed as to Evert Mustonen, Emil Stur, and Joe Hankola, and reversed as to the other libelants with instructions to the trial court to enter a decree in favor of each of the other libelants for the sum of $50.63.

RUDKIN, Circuit Judge, sat in the hearing of this case, but does not participate in the decision.