LIBBY, McNEILL & LIBBY v. OLSEN.

No. 8073.

Circuit Court of Appeals, Ninth Circuit.

Sept. 8, 1936.

Charles A. Hart, of Portland, Or. (Carey, Hart, Spencer & McCulloch, of Portland, Or., of counsel), for appellant.

Wm. P. Lord, of Portland, Or., for appellee.

Before WILBUR, MATHEWS, and HANEY, Circuit Judges.

MATHEWS, Circuit Judge.

Twenty-six former employees of appellant assigned to appellee their claims for additional compensation under an employment contract with appellant. The employment contract was attached to and formed a part of the shipping articles under which appellee's assignors shipped from Seattle, Wash., by appellant's steamship Otsego, to fish for salmon in Alaskan waters during the season of 1933. Pay-

ment having been refused, appellee filed his libel in personam to recover the additional compensation claimed by his assignors. Appellant's answer admitted the execution of the contract and the performance of services thereunder by appellee's assignors, but pleaded payment in full for all such services and denied that any additional compensation was due. The District Court held that appellee's assignors were entitled to additional compensation in the aggregate sum of $1,200.24, and accordingly entered its decree in appellee's favor. This appeal is from that decree.

Appellee's assignors and fourteen other employees of appellant were hired at Seattle. Others were hired in Alaska. All signed the same employment contract. Those hired at Seattle, including appellee's assignors, were to work, and did work, as seamen on the "run" to and from Alaska and as fishermen and trapmen at appellant's receiving station in Alaska. Those hired in Alaska were to and did work as fishermen and trapmen at the same receiving station. The Seattle-hired employees were to and did receive $100 each as "run money." The Alaska-hired employees were to and did receive $50 each in lieu of "run money." All, whether hired at Seattle or in Alaska, were to and did receive certain specified sums for salmon caught and delivered to appellant. As to these items, there is no controversy.

The contract contemplated that appellant might, as in fact it did, purchase salmon caught by fishermen and trapmen not employed at its receiving station. As to this, the contract provided: "For salmon transferred ...... or received from other sources, all fishermen and trapmen employed at receiving station shall share equally in extra compensation, equal to one-third of the price paid for such transferred salmon where caught."

The parties disagreed as to the meaning of the phrase "all fishermen and trapmen employed at receiving station." Appellant took this to mean all fishermen and trapmen so employed, including those hired in Alaska. Accordingly, at the end of the 1933 season, appellant paid to, and divided equally among, all fishermen and trapmen employed at its receiving station, including those hired in Alaska, as extra compensation, an amount equal to one-third of the price paid for salmon caught by fishermen and trapmen not employed at its receiving station. Thus, according to appellant,

this provision of the contract was fully complied with.

Appellee contends that the phrase "all fishermen and trapmen employed at receiving station" means only those hired at Seattle; that it does not include fishermen or trapmen hired in Alaska. Thus appellee contends that the extra compensation payable at the end of the season included, not only that which appellant paid, but a further amount equal to one-third of the price paid for salmon caught by appellant's Alaska-hired employees, and that such compensation, instead of being divided among all fishermen and trapmen employed at appellant's receiving station, should have been divided only among those hired at Seattle. According to this contention, appellee's assignors were entitled to receive $1,200.24 more than was actually paid them.

This contention, which the trial court upheld, must be rejected. The quoted provision of the contract cannot be construed to mean what appellee says it means. No such construction was adopted or approved in Ahlquist v. Alaska-Portland Packers' Ass'n (C.C.A.9) 39 F.(2d) 348, cited by appellee. No question of construction was involved in that case.

If the quoted provision were ambiguous or subject to different interpretations, we might consider the practical construction, if any, placed on it by the parties. Alexander Pickering & Co. v. Chinese American Cold Storage Ass'n (C.C.A.9) 71 F.(2d) 895, 900; White Star Bus Line v. People (C.C.A.1) 75 F.(2d) 889, 891; Claiborne-Reno Co. v. E. I. DuPont de Nemours & Co. (C.C.A.8) 77 F.(2d) 565, 568. But this provision is not ambiguous or subject to different interpretations. It therefore cannot be varied or overthrown by any practical construction which the parties may have placed on it. Lesamis v. Greenberg (C.C.A.9) 225 F. 449, 451; Arkansas Amusement Corporation v. Kempner (C.C.A.8) 57 F.(2d) 466, 476; Page on Contracts (2d Ed.) vol. 4, § 2034, p. 3514.

The meaning of the quoted provision is clear. It was correctly interpreted and fully complied with by appellant.

Decree reversed.

HANEY, Circuit Judge (concurring).

I agree that the contract as written is not ambiguous, and, since there has been no attempt to reform the contract on the ground of mistake, we must recognize and construe its terms.