## LESAMIS et al. v. GREENBERG.

(Circuit Court of Appeals, Ninth Circuit. August 9, 1915.)

No. 2514.

1. MINES AND MINERALS ⬤⟲99—MINING PARTNERSHIP—FIRM AGREEMENT—CONSTRUCTION.

A firm agreement stipulated that plaintiff should be a full partner with the others and have a quarter undivided interest in mining claims acquired or to be acquired. The other members, on the day of the execution of the agreement, conveyed to plaintiff an undivided fourth of all mining properties then held by the copartners in consideration of $6,000 cash and $24,000 "to be paid of the first money taken out of the ground." *Held*, that the quoted words referred to the first money taken out of the ground to which the partner was entitled, and the intendment was that the first money should be the gross amount to which the partner was entitled.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. §§ 223, 224; Dec. Dig. ⬤⟲99.]

2. CONTRACTS ⬤⟲170—CONSTRUCTION—ACTS OF PARTIES.

The manner in which parties to a contract treated its stipulations is an aid to its construction, where it is ambiguous; but, where the contract can be construed by taking it alone and viewing it as a whole, that manner of interpretation should be adopted.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 753; Dec. Dig. ⬤⟲170.]

3. MINES AND MINERALS ⬤⟲100 — MINING PARTNERSHIP — DISSOLUTION — RIGHTS OF PARTNERS.

Where partners have an equal interest in the firm property, the proceeds on a sale of assets on the dissolution of the firm must be applied on the basis of an equal division.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. § 225; Dec. Dig. ⬤⟲100.]

4. MINES AND MINERALS ⬤⟲98—MINING PARTNERSHIP—FIRM PROPERTY.

Three persons owning mining properties made a firm agreement with a fourth person, whereby he should be made a partner with a quarter undivided interest in all mining and other properties then owned or which might thereafter be acquired, and the three persons at the same time executed to the fourth a deed of an undivided one-fourth of all mining properties then held by them for a specified consideration. *Held*, that mining claims owned by the three persons at the time of the agreement and conveyance were firm property and must be so disposed of on dissolution of the firm, especially where all the parties so treated the property while conducting the firm business.

[Ed. Note.—For other cases, see Mines and Minerals, Dec. Dig. ⬤⟲98.]

5. JUDICIAL SALES ⬤⟲31—EXECUTION ON DECREE—CONFIRMATION—EFFECT.

Irregularity of the clerk in issuing, under Civ. Code Alaska, §§ 267, 382, an execution on a decree in a suit for the dissolution of a firm and for an accounting, instead of delivering to the officer a certified copy of the decree for his execution, is cured by confirmation of the officer's sale, made in conformity with section 278.

[Ed. Note.—For other cases, see Judicial Sales, Cent. Dig. §§ 59–67; Dec. Dig. ⬤⟲31.]

6. JUDICIAL SALES ⬤⟲7—AUTHORITY OF MARSHAL—DECREE—ENFORCEMENT.

Under the Alaska Code, providing that where a judgment is a lien on real property no levy of execution is necessary, a levy is unnecessary under a decree requiring the marshal of Alaska to sell property, and the

marshal may execute the decree without any independent or subsequent order of court.

[Ed. Note.—For other cases, see Judicial Sales, Cent. Dig. § 20; Dec. Dig. 7.]

7. APPEAL AND ERROR 460—STAY OF PROCEEDINGS—STATUTORY PROVISIONS.
 Under Civ. Code Alaska, § 508, declaring that provisions of law regulating the procedure in cases brought by appeal or writ of error to the Supreme Court or the Circuit Court of Appeals shall regulate the procedure as to appeals and writs of error from the Alaska courts, and the Revised Statutes, providing for supersedeas and the manner in which it may be obtained, an Alaska court decreeing a sale of property need not postpone the sale until an appeal to the United States Circuit Court of Appeals has been heard, in the absence of any supersedeas.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2217–2226, 2245, 2246; Dec. Dig. 460.]

Appeal from the District Court of the United States for the Second Division of the District of Alaska; Cornelius D. Murnane, Judge.

Suit by H. Greenberg against Jack Lesamis and others. From a decree granting relief, defendants appeal. Modified and affirmed.

O. D. Cochran and G. J. Lomen, both of Nome, Alaska, and Thomas R. White, of San Francisco, Cal., for appellants.

William A. Gilmore, of Seattle, Wash., for appellee.

Before GILBERT and ROSS, Circuit Judges, and WOLVERTON, District Judge.

WOLVERTON, District Judge. This is a suit instituted by appellee for dissolution of a mining partnership and an accounting.

On March 19, 1910, Jack Lesamis, John Tyapay, Andy Garbin, and the appellee Greenberg entered into an agreement of copartnership, whereby it was stipulated that:

"H. Greenberg is, and shall be a full-fledged partner with the above-mentioned parties (Lesamis, Tyapay and Garbin), and have one-quarter undivided interest in all claims, lodes, water rights acquired or to be acquired and owned by the above-mentioned parties. It is further agreed that H. Greenberg is to furnish the above-mentioned parties with provisions from time to time up to July, 1910."

On the same day Tyapay, Garbin, and Lesamis executed a deed to Greenberg for an undivided one-fourth of all the mining properties then held by them, the consideration being $30,000; "six thousand dollars ($6,000.00) in lawful money of the United States of America to them in hand paid by said party of the second part (Greenberg), the receipt whereof is hereby acknowledged, and the balance of twenty-four thousand to be paid of the first money taken out of the ground." The partnership was called "Klery Creek Mining Company." The parties commenced mining operations at once, and, plaintiff alleges, continued until the fall of 1911, when a disagreement arose; hence the suit to dissolve the partnership.

On September 2, 1911, Garbin transferred and assigned to the defendant Stanley all his interest in the mining claims and in the partnership assets, and on the same day Lesamis likewise transferred and assigned all his interest in said claims and assets to Sam Sallo. In a

separate answer Stanley and Sallo claim the respective shares and demands of Garbin and Lesamis in the partnership assets.

After a full hearing and trial upon the merits of the cause, the court made findings, and, among other things, found that the mining claims were put into the partnership, and became and were partnership assets, and that the Klery Creek Mining Company operated the mines from March 19, 1910, to September 1, 1911, but that on the latter date the parties disagreed and were unable to carry on their business together longer; that Stanley and Sallo took, and now hold, whatever interest they have in the partnership property and assets with full knowledge of the business conditions of the partnership; that they so hold such property and demands in trust for the defendants Garbin and Lesamis, respectively; that the total gold production for 1910 of the Klery Creek Mining Company was $16,251.42, and the total for 1911 was $9,786.88; that the total indebtedness of the company due to Robinson, Magids & Co., or its assignee, Philip Murphy, was the sum of $19,314.94; and that the parties were indebted to the mining company in sums as follows, respectively: Lesamis $4,429.21, Tyapay $4,703.21, Garbin $4,215.40, Greenberg $5,967.10—the court holding that the $24,000 deferred payment was payable from the net profits of the mining operations, and not from Greenberg's one-fourth interest therein.

A decree was entered in pursuance of these findings.

[1, 2] The appellants insist, in the first place, that the court erred in its interpretation of the contract of sale, or the conveyance of the undivided one-fourth interest in the mining claims to the appellee, relative to the manner of payment of the $24,000 deferred payment as part consideration for the conveyance. The stipulation is that such balance is "to be paid of the first money taken out of the ground." The District Court was induced, by reason of the acts of the parties and their seeming construction of the paper, to hold that such balance of the purchase price was to be paid from the net proceeds of the mining claims, which means that all the net product of the mines was to be applied in discharge of such balance. It must be conceded that the stipulation does not so read. It is plain that the payment does not become due until the money is taken out of the ground, and, by reason of the contingency, might never mature. But the controlling idea respecting the construction of the paper is that Greenberg was purchasing a one-fourth interest only, and was to pay $30,000 for that interest, $6,000 of which he paid in cash. The balance he was to pay when the money was taken out of the ground; not he and his partners, nor the firm. He could pay that, therefore, only out of his interest in the money taken out of the ground. Otherwise his partners would be contributing three-fourths of the money to pay his obligation to them. This could not have been intended, and the contract is susceptible of no such construction. Of course, the manner of the parties' treatment of the contract and its stipulations is often an aid to construction of the instrument, where the terms are ambiguous and their meaning involved. But, where the contract can be rendered by taking it by the four corners and viewing it as a whole, that manner of interpretation

is most satisfactory, and should be adopted. So construing the contract, the plain meaning of the words "of the first money taken out of the ground" is the first money taken out of the ground to which the grantee was entitled, which would be one-fourth of the amount so taken. And the intendment is that the first money shall be the gross amount to which the grantee is entitled, and not the net. We think therefore the trial court was in error in its interpretation of the contract. Taking the court's finding as to the gross products of the mines, which is: For the year 1910, $16,251.42; 1911, $9,786.88—aggregating, $26,038.30—the appellee would be entitled to have one-fourth thereof, or $6,509.57, applied on the $24,000 deferred payment. In other words, that amount on a settlement would be coming to each of the parties. But, as the business of the firm resulted in a deficit, the adjustment must be apportioned in the payment of the indebtedness of the firm. So apportioning it, the amount of the indebtedness to the mining company of each of the appellants Lesamis, Tyapay, and Garbin, as found by the trial court, would be reduced by $1,553.88, and that of the appellee increased by $4,661.66, leaving such indebtedness as follows:

| | |
|---|---|
| Lesamis | $ 2,875 33 |
| Tyapay | 3,149 33 |
| Garbin | 2,661 52 |
| Greenberg | 10,628 76 |
| Total | $19,314 94 |

The finding of the trial court should be modified to conform to this deduction.

[3] As sales of assets are made, of course, the partners will share equally in the proceeds, and be entitled to have the same applied in that proportion to their indebtedness to the firm, and the adjustment in the end will be on the basis of an equal division of the partnership property.

The amount of the indebtedness thus found due by the partners to the firm is the amount of the indebtedness of the firm to Robinson, Magids & Co., or Philip Murphy, the assignee, which is practically all its indebtedness. The testimony shows but one small account above that, of $2.50, and no one is insisting upon that.

[4] It is next insisted that the mining claims did not constitute partnership property. But we are of the view that such claims were intended by the parties to become partnership property, and they were so treated by the parties while conducting the business of the firm. The claims are therefore subject to the partnership indebtedness as partnership assets.

Again, the appellants urge that the last year's business was conducted by Greenberg alone, and not by and on account of the firm. This is wholly refuted by the strong preponderance of the evidence, and, the trial court so finding, it is unnecessary that we here make further comment upon the testimony.

Further objections are urged, namely, that Robinson, Magids & Co. were given a preference over other claims, that Stanley and Sallo were entitled to credit for assessment work, and that the decree was

prematurely entered. We have examined these, and find them without merit.

[5] Error is also assigned because of the court's refusal to quash the execution, on motion directed to that purpose. It is first suggested that the clerk has no authority to issue execution upon judgments of this nature. The Civil Code of Alaska directs that, on judgments in actions at law, the clerk shall issue the execution. Section 267, Civil Code Alaska (Fed. Stat. Ann. 101); and by section 382 (1 Fed. Stat. Ann. 126) this provision is made applicable in equitable judgments, so far as the nature of the judgment may require or admit.

The ordinary practice in equity is, where the property is directed to be sold by the master or the marshal, as the case may be, for the clerk to issue to the officer a certified copy of the decree, and with this in hand the officer executes the decree by sale, return, etc., and upon his return of the sale, if regular, it is confirmed by the court. If there was irregularity here in issuing an execution by the clerk instead of making and delivering to the officer a certified copy of the decree for his execution, that was an irregularity merely, which is cured by the confirmation, and no error can be assigned respecting it at this time. The property seems to have been advertised and sold in conformity with the statute of Alaska, Civil Code, § 278 (1 Fed. Stat. Ann. 105).

[6] It is next objected that there was no levy. The Alaska Code is taken bodily from the Oregon statute, and it has been held that, under the Oregon statute, where the judgment is a lien upon real property, no levy of the execution is necessary. This in a suit for foreclosure. Bank of British Columbia v. Page, 7 Or. 454. But the usual method of sale in equity procedure is by direction in the decree that the property be sold by a master. 2 Bates on Fed. Eq. Procedure, 772. And we see no reason why the practice may not apply in equitable actions, in the jurisdiction of Alaska, where the nature of the judgment is not suited to the ordinary execution provided for by Code. The decree in the case at bar provides that the marshal of Alaska shall sell the assets. It was not requisite for an execution of the decree that any independent or subsequent order of the court be made.

[7] Again, it is urged that, under the motion, the court should have postponed the sale until the appeal to this court was heard. Section 503, Alaska Code (1 Fed. Stat. Ann. 148), provides that all provisions of law regulating the procedure and practice, in cases brought by appeal or writ of error to the Supreme Court or the Circuit Court of Appeals, shall regulate the procedure and practice pertaining to appeals and writs of error from the Alaska courts. The Revised Statutes of the United States provide for supersedeas, and the manner in which it may be obtained. Otherwise the courts will not ordinarily stay execution or postpone sales pending hearing on appeal.

Finding No. 11 will be changed to conform to this opinion, and the decree will be modified accordingly. Otherwise it will be affirmed, neither party to recover costs on the appeal.