## In re LOUISIANA OIL REFINING CORPORATION et al.
### No. 5499.

District Court, W. D. Louisiana, Shreveport Division.

Aug. 18, 1937.

Robert Roberts, Jr., and Blanchard, Goldstein, Walker & O'Quin, all of Shreveport, La., for debtor.

Howard B. Warren, of Shreveport, La., for Stockholders' Committee.

Charles I. Denechaud and Jos. A. McCaleb, both of New Orleans, La., for Torquay Corporation.

Herold, Cousin & Herold, of Shreveport, La., for "Withdrawing" Preferred Stockholders and Torquay Corp.

Aubrey Barbour, of Newport, Ky., for himself and Mr. Bassman.

A. L. Pomerantz, of New York City, for R. E. Enright et al.

DAWKINS, District Judge.

A petition for reorganization of the Louisiana Refining Corporation and its wholly owned subsidiary, Louisiana Oil Corporation, under the provisions of section 77B of the Bankruptcy Law (11 U.S. C.A. § 207), was filed May 28, 1935, which was approved on the following day, the debtor was continued in possession temporarily, and a hearing upon the question of whether a trustee or trustees should be appointed was set for June 22d following.

On June 5, 1935, application was filed by the debtor and its subsidiary for the appointment of a stockholders' committee and counsel to represent it. Thereupon Andrew Querbes, president of the First National Bank of Shreveport, Martin J. Grogan, an independent oil operator in the North Louisiana and East Texas fields, and Howard B. Warren, an attorney of Shreveport, were appointed as such committee, with the latter as its counsel. At the hearing on June 22d, there being no objection or contrary suggestion, the debtor was continued permanently in possession.

Later the stockholders' committee was authorized to employ expert accountants to audit the books and affairs of the debtor and its subsidiary, and particularly to ascertain and determine the nature and extent

of the dealings between the debtor and its subsidiary, and the Arkansas Natural Gas Corporation and the Arkansas Fuel Oil Company and their affiliated companies. The purpose was, in view of the fact that the management and operation of the debtor and its subsidiary had been largely under the control of the same officers and employees as the two Arkansas companies, to ascertain the bona fides and fairness of all transactions between the two groups during the period of this dual control, as well as the correctness of the claims against the debtor. The firm of Peat, Marwick & Mitchell, a nationally known firm of accountants, of high standing, was selected and directed to make the investigation for the benefit of the committee and the court. The committee was requested to consider and examine the same carefully from the standpoint of all stockholders and creditors of the debtor, whose interests were adverse to those of the Arkansas group. At the same time, the committee was authorized to employ appraisers to value the property and assets of the debtor and its subsidiary. For this purpose an equally well-known firm of engineers, Ford, Bacon & Davis, was selected. In due course, both the accountants and appraisers made their reports to the committee, and the latter, after careful consideration and analysis of each, made its own reports to the court, submitting and filing with them as part of the record of this case and for the inspection of every one at interest, the extended reports of the experts.

On November 20, 1935, an order was entered for a hearing upon the proposed plan of reorganization, which had been submitted subsequent to the original proceedings on May 28, 1935, to be conducted in Shreveport, La., the business domicile of the debtor, on January 7, 1936. In the meantime, on December 26, 1935, the Torquay Corporation, as a holder of preferred stock, filed an opposition to the plan of reorganization. At the hearing, which began on the date set, January 7, 1936, further oppositions by Wm. F. Genheimer and others, holders of common stock, were filed. The proofs of claims, including those of creditors and stockholders (which had been classified in a manner as to which there was no objection), were submitted and filed, showing an acceptance of the plan by more than the necessary percentages of all classes. Two days were consumed in an extended hearing of evidence as to the affairs of the debtor and its sub-

sidiary, including its dealings and interrelations with the Arkansas companies, together with the reports of the experts and witnesses before the court as to these maters, as is revealed by the note of evidence and record made up at the time. The opposing common stockholders were ably represented by two sets of attorneys and the opposition of Torquay Corporation by its counsel. At the conclusion of the hearing, the court, of its own motion, instead of closing the record and passing upon the plan, directed that the matter be left open for a period of thirty days, during which time any further evidence as to its fairness might be offered. This time expired without any one making application for further evidence, although an intervention was filed by one group of dissenting common stockholders, who had appeared and been represented by counsel at the hearing upon the application for approval of the plan of reorganization, the main purpose of which was to have suits brought against the Arkansas group, to, in effect, have it determined that the entire operations of the debtor and its subsidiary, as well as the Arkansas group over the period of common control, was a joint enterprise or venture, and to compel treatment of the entire matter in that light. This intervention was permitted to be filed, but was denied, and this issue, as I conceive it, was disposed of adversely to said common stockholders on their appeal. The thirty-day delay carried the matter over to the 7th of February.

On the 9th of that month the judge of this court became ill and was unable to attend to any business for several months. In view of this prolonged illness, it had been tentatively arranged to have the Senior Circuit Judge of this circuit take up the matter for determination, but circumstances prevented this, and on May 13, 1936, there was filed by the Continental Insurance Company and others, represented by Messrs. Herold, Cousin & Herold of Shreveport, La., what was termed "Withdrawal of Consents" to the plan of reorganization. The senior member of this firm, Mr. S. L. Herold, accompanied by Mr. H. C. Walker, Jr., one of the attorneys for the debtor, and Mr. H. B. Warren, a member of and counsel for the stockholders' committee appointed by the court, called upon the judge at his residence in Monroe, he still not having fully recovered. The fact of the filing of the "withdrawals" was brought to the judge's attention, but

Mr. Herold stated he would not ask any action thereon at the time, and a discussion was had with the judge as to the possible increase in value of the debtor's assets by virtue of the discovery and development of oil in the Rodessa, North Caddo field. The judge stated at the time that it appeared he might not be able to personally conduct a hearing for some time and for which reason a special master would probably be appointed for the purpose, mentioning the name of a Shreveport attorney who had acted in other similar instances and as to whom there seemed to be agreement that the selection would be satisfactory to all present. After this conference, and on May 26th following, the stockholders' committee filed a petition for reaudits and reappraisals by the same experts, which were ordered and reports subsequently furnished to the committee. The committee examined and considered these supplemental reports in connection with the original audit and appraisal, and filed its own reports with the court, along with those of the experts on June 30th and July 16th, respectively.

The court, on the 3d day of October, 1936, sent identical letters to the attorneys representing the various groups, that is, opposing common stockholders, opposing preferred stockholders, "withdrawing" preferred stockholders, stockholders' committee, and the debtor and its subsidiary, that it would hold a hearing "as to the affairs of this company" in Shreveport on November 9, 1936, and each and all were "invited to appear at ten o'clock A. M. (on that date) to participate in this hearing, with the view, if possible, of working out some solution of the problems of this company and its subsidiary, that may be to the best interest of all the creditors and stockholders."

On the 9th of November the hearing was held as suggested by the court, at which appeared representatives of the common stockholders, preferred stockholders, including the group which had filed their "withdrawals" and of the debtor, its subsidiary, and Arkansas Fuel Oil Company, proposed purchaser of the properties. The reaudits and reappraisals, together with the reports and comments of the stockholders' committee, were presented. The court considered that the important question before it at that time was the extent to which the discovery of oil in the Rodessa field, or any other circumstances, had added value

to the assets of the debtor and its subsidiary and the consequent bearing upon the fairness of the proposed plan of reorganization. There was no suggestion at that time by the group of preferred stockholders or their counsel of any unfairness because of intercompany relations of the debtor, its subsidiary and the Arkansas group of companies. At the inception, the court asked if it was desired by any one present to make a record of what took place and, if so, he would call the court stenographer and have it done. It was indicated by all who responded that it was not necessary, no different suggestion was made by any one else, and the judge was led to believe it would be satisfactory to all present to proceed informally. Thereupon the reports of the experts and of the stockholders' committee of its analysis and conclusions upon the same were considered, members of the committee made statements and were interrogated in regard thereto, other persons, particularly from the land and geological departments of the debtor and its affiliated companies, were called and gave information about the holdings in the Rodessa and East Texas fields, as well as in the Bossier parish Sligo field and the Cotton Valley field in Webster parish. Maps showing the location of properties in which the debtor was interested, the extent and trend of development, as well as much other data bearing upon the point as to the effect upon the properties of the debtor in these fields and otherwise, were submitted and considered. It is true that no one was formally sworn as a witness, but the court thought that the truth of the matters under investigation could be more readily ascertained in this manner, since no one had, in response to its inquiry, suggested a different course or that there would be any question about the correctness of statements made or data furnished. Similar methods had been used by the judge in other proceedings of this kind with satisfactory results.

The attorney for the Torquay Corporation took the position that he would stand upon the contention principally that his client could not be forced to take stock in another corporation for the reason that such a requirement would be unconstitutional; while Mr. S. L. Herold, for his clients, contended that they had the absolute right to withdraw, regardless of what the court thought of the matter. As the hearing, which had consumed the day, was concluded, counsel for the debtor an-

nounced that the Arkansas Fuel Oil Company, principal creditor and whose shares of preferred stock it was proposed to issue to the preferred stockholders of the debtor corporation, had authorized him to say that the Arkansas group were willing, as they had been at all times, to concede to any one the right to take their position in the proposed plan, if its debt of some $9,000,000 was paid and they received the ten cents per share for common stock as was contemplated therein. Thereupon Mr. Herold requested a delay of ten days before the court acted upon the matter, in which to present the offer to his clients. The court announced that the delay would be granted. At the end of that time his son, and, partner, Mr. Sam Herold, reported to the court, again informally in its chambers, in the presence of counsel for the debtor, stockholders' committee, and the Arkansas group, that, while nothing definite had been accomplished, if given an additional thirty days, he thought it possible something along this line could be worked out. The court stated that, in view of the long delay which had already intervened, it did not feel justified in holding the matter in abeyance longer on such uncertainty, and the requested extension was refused. On the following day, November 20th, one A. L. Pomerantz appeared on the scene, claiming to represent certain common stockholders who had not even proven their claims, and presented certain pleadings suggesting other plans and relief and requesting further delays, the details of which are shown in the documents which he was permitted to file. After considerable discussion, he was given until the next day to present other suggestions, but, after hearing them and considering their nature, the court concluded that the time had come for it to act upon the matters before it without further delay. Mr. Pomerantz was allowed to file all of his documents, but the relief sought was denied.

Having thus before it what appeared to be reasonably full information as to the improvement in the condition of the debtor's affairs, resulting from developments in the oil fields above mentioned, and every one having again been heard with opportunity for presenting evidence upon the fairness of the plan, the court concluded that the withdrawals should not be allowed, but that it was justified in increasing the consideration to be received by the preferred stockholders to the extent of one-fourth and of the common stockholders to the extent of 15 cents per share, if the stock held by the Arkansas Natural Gas Corporation did not participate in payments to common stockholders. This latter corporation owned all of the common stock of the Arkansas Fuel Oil Company, the purchaser. The audits and appraisals show the increase in values and, inasmuch as the attempted withdrawals were based principally upon this alleged improvement and every one had been given the opportunity to submit any evidence desired upon the point, but which was done only by the debtor, its affiliated companies, and the experts appointed by the court under the direction and supervision of the stockholders' committee, the court felt it was warranted in according the increased considerations to the two classes of stockholders and that their positions would not only not be adversely affected but would be considerably benefited by the amendment which it decided to make. It was not thought for a moment there would be any contention of an insufficient hearing upon any of the matters before the court. The conclusion which was reached was made known to counsel for the "withdrawing" preferred stockholders, and he was consulted with respect to the form of the decree and made some suggestions in regard thereto. There was no intimation of a contention that the interests of the preferred stockholders had been adversely affected by the change, or of a desire for further hearing in regard thereto, and the court assumed that whatever review might be sought by this group would be upon the questions of law for which counsel had contended.

In presenting the petition for appeal, counsel had drawn it with a view of asking supersedeas, but this was stricken out and the matter carried up accordingly. Thereafter, and proceeding upon the theory that the judgment approving the plan was not stayed by the application for appeal, counsel for the debtor, with full knowledge of the court, proceeded to carry it into execution. It was brought to the attention of the judge that, unless application to the courts of Virginia, the state of its creation, was made, to dissolve the debtor corporation, franchise fees or taxes, amounting to several thousand dollars, would have to be paid, and counsel was advised by the court that it saw no reason why this course should not be followed. However, some months later, while

the judge was sitting in another division, away from his files and records, a letter was received from counsel for the appealing stockholders, protesting at the dissolution, and the court, for the reasons stated, not having its records before it, or recalling the full circumstances of the matter and in the midst of a busy term of court, wrote suggesting that the final disposition of that question await the decision of the Circuit Court of Appeals (Continental Ins. Co. v. Louisiana Oil Refining Corp., 89 F.(2d) 333, 339). But, after informing himself further, and reviewing what had transpired, it was recalled that counsel for the debtor had, as stated, informed the court of the proposed dissolution for the purposes indicated.

The Court of Appeals for this circuit, in disposing of the application for appeal, by both common and preferred stockholders, on April 10, 1937, reviewed the whole case, and held that "The appeal of the common stockholders fails," but that "appeals of the preferred stockholders are sustained with costs, and the decree confirming the plan is set aside and further proceedings directed to be taken according to law."

The court and counsel thereafter were confronted with the necessity of determining just what was contemplated by this decision. The attorneys who had represented the debtor and its subsidiary in provoking proceedings under section 77B construed it to mean that the decree of confirmation had been set aside because a proper hearing had not been had upon the "withdrawals of consent," which the opinion stated should have been treated as an application for permission to withdraw, and on May 24, 1937, presented to this court a petition on behalf of the debtor, the Arkansas Natural Gas Company, and the Arkansas Fuel Oil Company, wherein was recited the action of the Court of Appeals, and praying that a hearing be had for the following purposes:

(1) To consider the notice of withdrawal of acceptances of the plan of reorganization by Continental Insurance Company and some nineteen other corporations and individuals, "and to determine if such of them as had previously filed acceptances of the plan should be permitted to withdraw such acceptances."

(2) "To receive and hear evidence upon and to determine the effect of the amendment to the original plan upon the status and rights of creditors and stockholders with particular reference to the interest of holders of preferred stock of the debtor; and in the event that the court should find that the interest of any stockholder or creditor (other than Arkansas Natural Gas Corporation, Arkansas Fuel Oil Company and Cities Service Company, who have previously and formally accepted the plan as amended) is materially and adversely affected by the modification of the plan, to fix a period within which such stockholder or creditor may withdraw his prior acceptance of the plan of reorganization and to designate the character of notice to be given by such withdrawing stockholder or creditor."

(3) "In event that sufficient withdrawals of prior acceptances of the plan of reorganization should be tendered and allowed to cause the plan to be accepted by the holders of less than a majority of any class of stock of the debtor, then to determine if the interest of the holders of such class of stock is affected adversely by the plan or if the plan provides adequate protection for the realization by them of the value of their equity, if any, in the property of the debtor, either as provided in the plan by appraisal and payment in cash of the value of their stock or, at the objecting stockholders' election, of the securities allotted to such stockholders under the plan."

(4) "To consider and to determine if the plan as amended meets the requirement of section 77B of the Bankruptcy Act and should be confirmed and approved."

(5) "Your appearers further pray that the Clerk of this Honorable Court be directed to give a written notice of the time and place of the holding of such hearing, by registered mail, to all holders of preferred and common stock who have filed proof of their ownership of such stock, and that a similar notice be given by the Clerk to all counsel of record and that notice be given to all parties at interest by publication at least twice a week for a period of two weeks in the Shreveport Journal, a newspaper of general circulation in the city of Shreveport, State of Louisiana."

An order was entered on the petition, fixing June 24, 1937, as the date for hearing and notice given to all concerned.

On June 19, 1937, the Torquay Corporation of Delaware filed a motion to dis-

miss for want of jurisdiction, alleging that, while the appeal was pending, Arkansas Natural Gas Corporation had filed in the courts of Virginia a petition for the dissolution of the debtor, and the latter at the same time answered, joining in the prayer, and upon which the Virginia court had rendered a decree dissolving the debtor corporation and terminating its franchise. For this reason it was alleged that "there is no longer a corporate petitioner before this court to be reorganized, and accordingly this honorable court has no right, power, authority, discretion or jurisdiction further to proceed herein."

On the same date a plea in abatement was filed by the said Torquay Corporation, praying for the dismissal also of the petition of the debtor and the Arkansas companies for the hearing, on the ground that, under orders entered in the course of the proceedings in this court, the debtor had been retained in possession of its property and assets but that, pending the appeal, it had transferred all of its property and assets to the Arkansas Fuel Oil Company, which had thus become "a trustee ex maleficio"; and, further, "Arkansas Fuel Oil Corporation, being in the wrongful possession of all of the assets of Louisiana Oil Corporation, and Louisiana Oil Refining Corporation having disposed of all of such assets, said petitioners or movers are without right to invoke the extraordinary provisions of section 77B of the Bankruptcy Act, or the inherent Equity powers of this Court without having first restored to this Court the entire subject matter of the said trust."

It prayed that without prejudice to its motion to dismiss the court withhold any and all relief of any character to the debtor or the Arkansas companies "unless and until each of them have made full and complete restitution to this court of all of the assets of the debtor, so that the same may be administered in accordance with the law, through a receiver appointed by the court, or otherwise."

On the same day, that is, June 19, 1937, there was filed by J. S. Bache and other preferred stockholders, whose holdings it is alleged amount to 6,983 shares, a petition wherein it was recited that Bache & Co., a copartnership, was authorized to represent all of said holders of preferred stock in proceedings for the reorganization of said debtor corporation; that they had all filed acceptances of said plan on Janu-

ary 7, 1936, but that on May 13th of the same year they had filed "notice of revocation and withdrawal of such acceptances (with good and sufficient reasons therefor)," and that none of them "is now willing to accept the plan of reorganization * * * either as originally proposed or as now proposed to be amended pursuant to the suggestion of this court in its order entered herein on November 20, 1936."

The pleading further alleges as follows: "Your petitioners believe, and therefore allege, that the United States Circuit Court of Appeals for the Fifth Circuit in its decision herein under date of April 10, 1937, has held, as a matter of fact and law, that your petitioners, together with the owners of Louisiana Preferred Stock as joined in said notice of revocation and withdrawal filed herein on May 13, 1936, have withdrawn and revoked their votes of acceptance and have given good reasons therefor (further amplified in the affidavit of Morton F. Stern sworn to June 16, 1937, attached to and made a part hereof); that the order of this Court made herein on November 20, 1936, refusing to confirm the Plan of Reorganization dated November 19, 1935 unless and until amended was also a finding and decree that, as a matter of fact and law, your petitioners, together with the owners of Louisiana Preferred Stock as joined in said notice of revocation and withdrawal filed herein on May 13, 1936, gave good and sufficient reasons for revocation and withdrawal of their acceptances; that any acceptances heretofore given by your petitioners and said other owners of Louisiana Preferred Stock as joined in said notice of revocation and withdrawal filed herein on May 13, 1936 have for the past twelve months been revoked and withdrawn; and that this Court cannot properly at this time or any time hereafter reconsider, hold any hearings or take any testimony with respect to, the revocation and withdrawal of such acceptances."

Further, that without prejudice to the contention the withdrawals were effective from the date of their filing May 13, 1936, petitioners for the reasons set forth therein and in the "affidavit of Morton F. Stern, sworn to June 16, 1937, attached hereto and made a part hereof, and because of the vastly improved financial condition of the debtor, the oil industry in general and in the country at large as of this date, do of this date revoke and withdraw all ac-

ceptances which may heretofore have been given. * * *"

The pleading prayed that the court hold: (1) That petitioners had effectively withdrawn their acceptances as of May 13, 1936; (2) in the alternative that they had legally withdrawn said acceptances as of the date of the filing of said petition, to wit, June 19, 1937; and, (3) if the court should determine to take testimony with regard to the withdrawal of acceptances as to either date, "further proceedings herein be delayed and postponed for such time as may permit the taking herein of depositions de bene esse by and on behalf of your petitioners, as provided in section 21 of the Bankruptcy Act of 1898 [as amended, 11 U.S.C.A. § 44] and section 639, title 8 of U.S.C. Annotated." (The taking of the deposition was waived by the proponents of the plan admitting Stern would testify, if present, to facts recited in his affidavit attached to this pleading.)

As of June 21, 1937, the Bache group of preferred stockholders filed their response to the petition of the debtor and Arkansas companies for the present hearing, in which they asked to "intervene" and set forth, in addition to the matters embraced in the pleas to the jurisdiction and abatement, a lengthy attack upon the debtor, its representatives, and those of the affiliated companies. In substance it alleges that the withdrawals left only a small minority accepting the plan; the condition of the debtor had materially changed for the better since January 7, 1936, and was making an operating profit.

Further, that the amendment of the original plan by the court, although it increased the consideration to be paid to both common and preferred stockholders, it "obviously recognized and found either, (a) that the original plan was not fair and equitable" and discriminated against the preferred stockholders "as of January 7, 1936, and thereafter, or, (b) that, as alleged by your petitioners and others under date of May 13, 1936, * * * became unfair, inequitable and discriminatory. In any event, the amendment * * * constituted a clear recognition and finding that petitioners * * * had honestly, because of being misled, or because of new information or a change in the condition of the debtor, or for other good reasons, revoked and withdrawn their acceptances and had altered their opinion of what was good for them, giving good and substantial

reasons therefor," but that notwithstanding the court had held the withdrawals without effect.

Further, that the debtor and Arkansas companies, influenced and controlled by the Cities Service Company, had filed proceedings in the courts of Virginia for the dissolution of the debtor, petitioners and other groups attempted to intervene therein, but were advised by their counsel that their appearances were too late, and that the counsel representing debtor and its affiliates in the state of Virginia refused to co-operate in an effort to have said dissolution decree set aside; that because of the same influence, that is, the domination of the Cities Service group, officers of the debtor have refused to sign any certificates of preferred stock, and thus prevented any further transfers, knowing that such refusal "would injure the value of the said shares of preferred stock."

Further, that the First National Bank of Shreveport, which in effect had been named as the transfer agent for the exchange of preferred shares of the debtor for those of the Arkansas Fuel Oil Company, had, in reply to requests for information, advised holders of such shares of the debtor "that transfer of the shares had been discontinued," and had attempted to induce the surrender of such shares for those of the Arkansas Fuel Oil Company, in execution of said plan, but had failed to mention or refer to the pendency of the appeal by petitioners, and has not at any time since the reversal of this court's decree advised holders of shares of preferred stock of the debtor of that fact.

Further, that neither the Arkansas companies, the debtor, nor their attorneys, advised the Court of Appeals of this circuit that they, "in willful disregard of the pendency of the petition for leave to appeal * * * had, nevertheless, consummated the amended plan * * * and were endeavoring to secure deposits and surrender of Louisiana preferred stock by silence in respect thereto or communications calculated to minimize the importance of your petitioner's appeal. * * *"

They denied that the amended plan made adequate provision for the realizing of the equity of the preferred stockholders in the estate of the debtor, either by the payment of cash or at their election through the taking of securities, as provided therein.

Further, that the debtor, its affiliates, attorneys and representatives, failed to advise the preferred stockholders of the pendency of the appeal, but induced them to surrender their stock for cash or the preferred stock of the Arkansas Fuel Oil Company, either by said failure to inform the owners of the facts or by representing that the appeal "involved only minor questions of practice and procedure."

Further, that the assets, properties, franchises, and business of the debtor and its subsidiary far exceed in value the debts and claims properly owing by them but are not sufficient to provide any excess beyond the amounts properly due therefrom to holders of preferred stock of the debtor.

Further, that the "Arkansas Fuel Oil Company has knowingly, willfully, and intentionally, and with full knowledge of these petitioners' appeal, discontinued the independent operation of the debtor * * * since December 1936," and has commingled all of the debtor's property and assets with its own, and "used, consumed, transferred and destroyed and otherwise disposed" of the same and failed to keep separate and distinct records and books of account of the debtor's affairs.

The prayer is that (1) "petitioners be permitted to intervene generally herein"; (2) that Arkansas Fuel Oil Company, Arkansas Natural Gas Corporation, Cities Service Company, their officers and agents, be required to account for the properties and assets of every description of the debtor and its subsidiary, and to restore the same in specie to the court, or to pay the cash equivalent for any not so returned; (3) that an independent trustee or trustees, having no past or present connection with any of these companies, be appointed, with independent counsel, and that they be directed to institute suits to compel such accounting and restitution of debtor's property, to prosecute any criminal acts that may appear, and to hold such assets and recoveries subject to the jurisdiction of this court; (4) that the said trustees be authorized to institute all necessary actions for damages; (5) that the court appoint a receiver for the assets, business, and properties of the Arkansas Fuel Oil Company; (6) that the Arkansas Fuel Oil Company, Arkansas Natural Gas Corporation, Cities Service Company, and First National Bank be required to account to the court for all of the preferred stock acquired by them; (7) that the court defer any and all hearings with respect to any plan of reorganization until it has subject to its jurisdiction the properties and assets of the debtor and its subsidiary; (8) that the Arkansas Fuel Oil Company be directed to deposit forthwith all books, records, and documents belonging to the debtor and its subsidiary, and "submit to your petitioners a duly verified list of the present holders and owners" of the preferred stock of the debtor; (9) that the trustee or trustees to be appointed be directed to forthwith communicate with all owners of said preferred stock who have surrendered their shares and to notify them of the setting aside of the decree of this court upon appeal, and to tender to such owners a return of their said stock, upon the delivery by them to a depository, to be named by the court, of the cash or preferred stock of the Arkansas Fuel Oil Company, received by them, as well as any dividends received by them on the stock of the said Arkansas Fuel Oil Company; and (10) that the Arkansas Fuel Oil Company, Arkansas Natural Gas Company, and Cities Service Company be directed to forthwith file complete report of all assets, business, and properties "of the debtor and its subsidiary received by them," showing dates received and the use made by them thereof, as well as the present condition, and "showing the alleged facts of and claims against the debtor and its subsidiary" by any of the three companies named.

On the day set for the hearing of the petition of the debtor and the Arkansas companies above referred to, to wit, June 24, 1937, J. S. Bache and others, who will be referred to hereafter as the Bache group, filed objections to the claim of the Arkansas Fuel Oil Company, alleging counterclaims on behalf of the debtor corporation against Cities Service Company and the Arkansas companies, growing out of the building of the pipe line into the East Texas oil field, excessive prices charged the debtor for crude oil, improper charges for advertising, unduly low prices paid by the Arkansas Fuel Oil Company to the debtor for storage of crude oil, alleged later to have been sold to the debtor for substantially higher prices than when placed in storage, for painting and renovating expense charged the debtor for placing symbols of the Cities Service Company on service stations of the debtor, transactions between the debtor and Richfield Oil Company, acting for the benefit of Cities

Service Company; and, further, that there is insufficient proof of the consideration for two notes of the debtor in favor of the Arkansas Fuel Oil Company in the sums of $4,382,462, and of $1,000,000, respectively, representing part of said claim of the Arkansas Fuel Oil Company against the debtor. The pleading prayed that the Cities Service Company, Arkansas Natural Gas Corporation, and Arkansas Fuel Oil Company be forthwith ordered to deposit in the court the books, records, and other documents pertaining to inter-company transactions between the three said companies with the debtor; and that a special master be appointed to take testimony and report on said claim.

### Plea to the Jurisdiction.

The plea to the jurisdiction of the Torquay Corporation is based upon the contention that, because the debtor, pending the application for leave to appeal by common and preferred stockholders, had applied to the courts of the state of its creation and obtained a decree of dissolution and the surrender of its charter and franchises, there was no corporate entity with which the court could deal and all of the debtor's property had passed into the hands of the Arkansas Fuel Oil Company, to which the plan contemplated it should be transferred. As pointed out in the ruling denying this plea, I am of the view that the court still has full power and jurisdiction to deal with the debtor and its relations to its stockholders and creditors as completely as if there had been no application for dissolution to the courts of Virginia. See Old Fort Improvement Company v. Lea (C.C.A.) 89 F.(2d) 286. As to the property itself, the same is still within the territorial jurisdiction of the court as it was before, and the Arkansas Fuel Oil Company, to whom parts of it may have been transferred, is a party to this proceeding and subject to the orders and judgment of this court. The latter can be made to respond to whatever requirements, whether they be for restoration, accounting, or otherwise, the court under the facts and the law may find appropriate. For these reasons, as well as those announced at the time the court overruled the motion to dismiss for lack of jurisdiction, I believe that the plea is without merit.

### Plea in Abatement.

As to the plea in abatement, or that the court withold any action upon the application of the debtor, the Arkansas Fuel Oil Company and the Arkansas Natural Gas Corporation, filed herein on May 24, 1937, until the property and assets of the debtor have been restored, what has just been said in connection with the plea to the jurisdiction is equally applicable. My view, as expressed in ruling upon the matter, at the inception of the hearing, is that these movers, as well as any other party desiring to appeal from the decree of confirmation of November 24, 1936, had the privilege of asking from the court a supersedeas or stay of execution of that decree, which would have held the entire matter in abeyance until passed upon by the appellate court; and, while some of them first approached the matter with that purpose in mind, for reasons which they evidently deemed sufficient, the claim to a supersedeas was abandoned and stricken from the application. In these circumstances, it is my opinion that the debtor, and other parties to the cause who desired, had the right to have execution, leaving the petitioners for appeal whatever remedies the law afforded, if successful. See Gerdes on Corporate Organization, vol. 3, p. 1920; Lesamis v. Greenberg (C.C.A.) 225 F. 449; Ency. of Fed.Proc. vol. 6, § 2868, pp. 557 et seq.; Hovey v. McDonald, 109 U.S. 150, 3 S.Ct. 136, 27 L.Ed. 888. As to what the remedy of an appealing stockholder in a proceeding of this kind would be, where the plan had been fully consummated, except as to the acceptance of the consideration due thereunder to the appellant, we are not called upon to say at this time.

Coming now to the question of what issues are properly before this court, in the light of the decision of the Court of Appeals, as I understand it, the holding was, in effect, that the "withdrawals" should have been treated as applications to withdraw the consents of those claimants to the original plan, for the reasons therein set forth, and it was the duty of this court to hear and determine whether those charges were well founded in law and fact. Of course if allowed, then the necessary majority of this class, preferred stock, would not have supported the plan, and it could not have been confirmed. Acting upon that interpretation, it is the opinion of this court that it should first determine whether the applicants should be permitted to withdraw their acceptances.

Treating it in this manner, the motion alleges as follows:

"1. That heretofore each of appearers filed with this Honorable Court his consent to the plan of reorganization submitted by the debtor. .

"2. That such plan of reorganization has not yet been passed upon by the Court, and that the proposition for the plan, therefore, remains unsettled.

"3. Your appearers are informed and believe and, therefore charge that the debtor owns a large interest in the Arkansas Louisiana Gas Company, which, in turn, is the owner of very valuable producing oil leases in Louisiana and Texas, and that, through such ownership the debtor is and has been for many months making large profits; and that by reason thereof, the financial condition of the debtor corporation is materially and even radically different from what it was at the date of the filing of the petition herein and of the consents heretofore given by appearers.

"In addition to this, they show that they are informed and believe and, therefore, charge that the debtor corporation is making an actual operating profit through its refining and sales departments, whereas, at the date of the said consents, it was, according to its books, operating at a loss.

"In addition to these facts, they show that, by reason of divers conditions, which will be in detail set out in formal oppositions to the plan which oppositions will hereafter be filed by each of these appearers, the said plan, whether or not it may have been fair or meritorious at the time of its original proposition, is now so unfair to each of appearers and so unjust and inequitable to them and to all of the other parties interested in the estate of the debtor corporation as to require its rejection.

"Wherefore, each of the above named appearers hereby withdraws the consent heretofore given with notice to the debtor that each of appearers will file in this cause an opposition to the plan of reorganization."

The record reveals fully the extent of the interest of the debtor in oil lands, leases, and properties in the various fields of Northwest Louisiana and East Texas, including those in which it was to share on the basis of one-fourth in the production and development from lands with the Arkansas Fuel Oil Company; also from month to month reports of the results of these operations, which do not support the allegation as to the production and receipt of "large profits" from those sources. The reaudit and reappraisal made pursuant to and after the filing of the motion to withdraw discloses the extent of the improvement and increase in values after the acceptance of the plan. While it would seem that the burden was upon the applicants to support their allegations and justify the contention as to the changed conditions warranting their withdrawal, they made no effort in that direction, but the debtor and the Arkansas Fuel Oil Company, as well as the stockholders' committee appointed by the court, with the assistance of the experts, supplied the court with complete information, which was fully considered in arriving at the increased considerations to be accorded both common and preferred stockholders at the hearing on November 9, 1936. It is true that this evidence and this proof was not recorded in a manner to be carried up in the appeal, but the court did find, both as a matter of fact and law, that the increased consideration of 15 cents per share for common stock and of one-fourth or $5 in cash per share of preferred stock with the option of accepting preferred stock in the Arkansas Fuel Oil Company for an equivalent amount was the full value of the improvement to which they were entitled.

At the hearing on June 24, 1937, pursuant to what the court considered its duty in the light of the decision of the Court of Appeals, all of the evidence, including the entire record, the reaudits and reappraisals, as well as conditions since that time and up to the date of this last hearing, were gone into and considered, and the court is now of the view that they do not show a greater value than was accorded to the interests of the two classes of stockholders in the former decree, after debts and liabilities were deducted, but, on the contrary, since November, 1936, there has been some depreciation in the value of the oil properties. It is, therefore, found and held as a matter of fact and law that the equity or interest of the preferred stockholders of the debtor in the estate, after considering all elements, does not amount to more than the $25 per share heretofore determined to be the amount which should be received for each share of the preferred stock of the debtor, and, whether taken in cash or represented by the preferred stock of the Arkansas Fuel Oil Company, said preferred stockholders of the debtor will realize all that they are entitled to receive from the estate.

The other allegations of the motion to withdraw were not and are not supported by the evidence offered herein, but I think are refuted by the record. There is nothing to show that the applicants for withdrawal were misled, but, on the contrary, they and every one connected with the matter have had available to them the records of this case, which include the inventories, reports of operations, audits, and appraisals. The very purpose of the audits and appraisals under the direction of the stockholders' committee was to ascertain the true relationships of the debtor and its affiliated companies, the fairness and bona fides of all their transactions, the amount of its just indebtedness, and the fair value of its property and assets. As heretofore stated, the experts were selected because of their well-known reputations and standing in their professions, and, while the applicants have sought to cast reflections upon them as having performed services for Cities Service Company, I do not believe that this court is justified in discarding their reports and appointing other experts, in view of all the circumstances of this case. It does seem that, if the applicants had genuinely believed the allegations of their motion, they would have been more diligent in presenting them to the court. However, as stated earlier in this opinion, their counsel, in the interview with the judge and others during the latter part of May, 1936, advised the court that they would not ask action upon the withdrawals at that time. Thereafter, of its own motion, in October following, the court set the hearing for November 9th, with the view as indicated in its letter to the various parties at interest, of considering and disposing of the debtor's affairs under the plan of reorganization which had been proposed, in the light of any improvement which might have taken place during the unavoidable delay. I believe that good faith is required on the part of all concerned, including creditors and stockholders, as well as the debtor, and, when the matter was approached in the manner which this court adopted, a similar spirit should have been shown by every one. A motive may possibly have existed in the fact that the Rodessa field, which includes the northwestern portion of Caddo parish, certain counties in Texas, and recently a small area across the line in Arkansas, had not been fully developed, and the applicants may have wished to speculate upon the possibilities of that situation through delay. In any event, neither at the hearing on November 9, 1936, nor the one on June 24, 1937, did they attempt by any sort of evidence to sustain the allegations with respect to the large increase in values. They still persisted, notwithstanding the opinion of the Court of Appeals, in the contention that they had the right to withdraw by simply stating their reasons without more. My conclusion is that the opinion of the Court of Appeals settled that proposition and the right was dependent upon what the court found after hearing and investigating those contentions. The evidence does not support the allegations of the motion beyond what has been found as the extent of the improvement.

### Opposition to the Claim of Arkansas Fuel Oil Company.

Now as to the opposition to the claim of the Arkansas Fuel Oil Company, which was filed on the day of the hearing, to wit, June 24, 1937, the record will show that the applicants obtained a written order from the court to withdraw this claim, no doubt for the purpose of preparing the opposition, only a day or two before the hearing. It again raises many of the issues, with perhaps more elaboration, which were sought to be injected into the case by Messrs. Barbour and Bassman, on behalf of common stockholders. In addition to having the benefit of the audit by Peat, Marwick & Mitchell, one of the members of the stockholders' committee appointed by the court, Mr. Grogan, was a former executive, in charge of the debtor and its affiliate before and for a while after the acquisition of control of the majority common stock by the Arkansas Natural Gas Corporation. However, he had some years prior to his appointment disposed of all interest in the debtor and had none in the affiliated companies, except a few shares of Cities Service stock—in fact, he had severed that connection because of disagreement, as to some of the policies, with the present executives, and could not, therefore, be charged with being unduly friendly toward them. Besides, he was an experienced oil operator, engaged in producing, refining, and selling crude oil and its products, entirely familiar with prices, cost of production, transportation, etc. In addition to the testimony which he gave when the plan of reorganization was first up on January 7, 1936, and again on November

9th of that year, which was not recorded, he was called at the hearing on June 24th and reiterated his opinion that the consideration to be paid by the Arkansas Fuel Oil Company for the assets of the debtor was all that they were worth. It was also brought out that the preferred stock was held in large blocks by insurance companies and others and that Mr. Clifford M. Leonard, a member, was chairman of the board of one of these companies, and had kept in touch with the affairs of the debtor and its management by the Arkansas group; that the agreement to accept the plan had been brought about through negotiations between these majority holders of preferred stock with the officials of the debtor and the Arkansas Fuel Oil Company before it was presented to the court. Among this stock so negotiating was included some, if not all, of that which is now seeking to withdraw, and hence it does not appear to occupy the position of total ignorance and dependence upon the statements and representations of the purchasing company, as might have been true in the case of small, scattered holdings. Mr. Leonard had also been an executive and the holder of the controlling common stock in the debtor, in whose operations he had participated for a number of years before selling that common stock to the Arkansas companies. Had there been such great discrepancies and unconscionable treatment of the debtor as the allegations of the opposition would imply it does seem that one in Leonard's position, in view of the knowledge he must have had as a representative of the major interest in the preferred stock, would have found it out before agreeing to accept the plan. He and those he represents have persisted in the acceptance and refused to participate in the appeal of the opponents, notwithstanding the statements contained in the affidavit of Mr. Morton B. Stern, offered on behalf of the opponents. It so happens that the present opponents constitute less than one-fifth of the preferred stock and therefore, insufficient to prevent consummation of the plan, if all were participating. Had there been substantial basis for the present contention, it would appear that other preferred stockholders would have joined in the opposition, but, on the contrary, after the appeal was taken, all except what has been termed the Bache group and the Torquay Corporation dismissed their appeals and the present opponents represent less than 20 per cent. of the preferred stock.

At the hearing on January 7 and 8, 1936, the court itself took occasion to inquire quite thoroughly of Mr. Grogan, the member of the stockholders' committee experienced in such matters, as to the bona fides of the claim of the Arkansas Fuel Oil Company, and his testimony shows this was one of the chief objectives of his committee in directing the audits of the debtor's affairs. He testified that he was convinced of its genuineness, as well as the fairness of the appraisal.

The decree of the Circuit Court of Appeals, reversing this court, was handed down on April 10th, Continental Ins. Co. v. Louisiana Oil Refining Corp., 89 F.(2d) 333, and the application by the proponents of the plan for the last hearing was made on May 24th and set for June 24th. More than sixty days intervened, therefore, in which, if the present opponents had seriously intended to urge the further investigation of this claim of the Arkansas Fuel Oil Company in the manner now suggested, they could have made the fact known to the court. Nothing, however, was done until the day of the hearing, when the voluminous opposition now under consideration was filed, with the suggestion of the appointment of a master and other auditors. As previously stated, it embraces largely the contention of Barbour and Bassman, and, in view of all the circumstances, I am of the opinion that such a course would not reveal anything different to that which the investigation already made has disclosed. I am, therefore, constrained to hold that the proposal is not justified and should be denied.

Were the Interests of the Applicants for Withdrawal Adversely Affected by the Changes or Amendments Which the Court Made in the Original Plan?

The undisputed evidence offered upon this point discloses that not only was the interest of preferred stockholders not prejudiced by the change, but the additional consideration which the Arkansas Fuel Oil Company, proposed purchaser of the assets of the debtor, whether paid in cash or received in an equivalent amount of preferred stock, represents a substantial benefit. It also shows, I believe, that this increase more than covers any enhancement in value of the debtor's property and the payment of $25 per share in cash will cover the entire equity of this class in the estate. The uncontradicted evidence shows that the 2½ shares of preferred stock of

the purchaser, Arkansas Fuel Oil Company, is well worth $25, and the financial condition of this company makes it a safe investment. The increase in the allowance to common stock from 10 cents to 25 cents per share did not and cannot adversely affect the rights of these or any other preferred stockholders of the debtor. The amount to be paid under the original plan to all common stockholders, embracing 1,-300,148 shares at 10 cents per share, was $130,014.80. Of this stock the Arkansas Natural Gas Corporation and Cities Service Company owned 797,400 shares, now to be eliminated, and all others 502,748 shares. The latter number, at 25 cents per share, amounts to $125,687, which will cover the outlay for common stock as against the sum of $130,014.80 of the original plan. The failure of the excluded stock to receive anything could not in any manner affect the holders of preferred stock to be issued in payment by the Arkansas Fuel Oil Company, for the reason that no obligation or liability towards that excluded stock exists against the last-mentioned company. It is true that the Arkansas Natural Gas Corporation, which under the amendment surrenders its right to receive anything, owns all the common stock of the Arkansas Fuel Oil Company, but that fact could in no sense cause prejudice to the holders of the preferred stock in the latter company. Nor could it prejudice the Arkansas Natural Gas Corporation, for whatever it waived in that direction was compensated for by the saving to its wholly owned subsidiary. The effect of the amendment is simply to give all preferred stockholders the full benefit of the improvement in the value of some of the debtor's assets during the unavoidable delay in passing on the original plan, and, if the excluded common stockholders, whose real interests are compensated for in the manner above stated, saw fit to waive their claims for the benefit of preferred stockholders, it does not seem that the latter have any ground to complain, or that the court should, for that reason alone, refuse to confirm the plan as amended.

My conclusion is that the amendment, in effect proposed by the debtor and the majority of common stockholders, is, under the circumstances, fair to all concerned, there has been full and complete hearing thereon, it does not adversely affect any class, and should be confirmed.

Proper decree should be presented.