# BOARD OF PUBLIC UTILITY COMMISSIONERS ET AL. *v.* NEW YORK TELEPHONE COMPANY.

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY.

No. 567.   Argued January 18, 19, 1926.—Decided April 12, 1926.

1. The just compensation safeguarded to a public utility by the Fourteenth Amendment is a reasonable return on the value of the property used, at the time that it is being used, for the public service. And rates not sufficient to yield that return are confiscatory. P. 31.

2. Constitutional protection against confiscation does not depend on the source of the money used to purchase property; it is enough that the property is used to render the service. *Id.*

3. The relation between a public utility and its customers is not that of partners, or agent and principal, or trustee and beneficiary. The amount of money remaining after paying taxes and operating expenses including the expense of depreciation is the company's compensation for the use of its property. *Id.*

4. The law does not require the company to give up for the benefit of future subscribers any part of its accumulations from past operations. P. 32.

5. Assets of a public utility represented by a credit balance in the reserve for depreciation can not be used to make up the deficiency in current rates which are not sufficient to yield a just return after paying taxes and operating expenses including a proper allowance for current depreciation. *Id.*

Affirmed.

APPEAL from a decree of the District Court granting a temporary injunction, in a suit by the Telephone Company to restrain the Board of Public Utility Commissioners, of New Jersey, from enforcing confiscatory rates.

*Mr. Thomas Brown* for appellants.

Depreciation expense is a charge made against earnings periodically to care for depreciation of the utility's property not covered by current repairs.   Depreciation reserve is the fund accumulated from such depreciation charges. *Knoxville* v. *Water Co.,* 212 U. S. 1, makes it clear that

the allowance in expense for depreciation is required in the interest of the bond and stockholders, on the one hand, and the public, concerned with continuously adequate and proper service, on the other hand. It likewise makes it clear that the measure of allowance is the sum required to assure that " the original investment remains as it was at the beginning," and that its purpose is " the making good the depreciation " and replacing the units of property " when they come to the end of their life." It also makes it clear that the allowance cannot be considered profit, for it is taken by the utility before and in addition to profit for the specific purpose above indicated. It follows that the depreciation reserve is built up, not merely in protection of the integrity of the investment of the bond and stockholders, but in the protection of the interest of the public in continuously adequate service as well. This reserve is the property of the company only in the sense that the legal title thereto rests in it, but its right of property therein is qualified by the public interest in protection of which the reserve is built up.

If it were profit it could be added to capital or disbursed to the stockholders in dividends, but it cannot be so used, nor is it to be considered as part of the property of the company which the latter absolutely owns. *Louisiana R. R. Comm.* v. *Cumberland Tel. & Tel. Co.*, 212 U. S. 410.

It must be remembered that in this case the court assumed that the company was getting a fair return on its property during the years when the excess in the depreciation reserve fund was being accumulated. This excess was accumulated unnecessarily, if not improperly, and at the expense of the rate payers. *Newton* v. *Consolidated Gas Co.*, 258 U. S. 165, distinguished. The action of the Board is in accordance with the general practice regarding the treatment of excessive reserves for depreciation. *Georgia Ry. & Pr. Co.* v. *Railroad Comm.*,

P. U. R. 1925, A, 594; *In re Thompson,* P. U. R. 1922, A, 558; *Re Eaton Rapids,* P. U. R. 1922, D, 94; *Re Consumers Company,* P. U. R. 1923, A, 430; *Re Southern California Edison Co.,* P. U. R. 1924, C, 1; *Re Utica Gas Co.,* P. U. R. 1922, A, 558.

The court erred in holding that the appellants were estopped from inquiring whether there was an excess in the depreciation reserve; and, finding such excess, from requiring that such excess be absorbed.

*Messrs. Charles M. Bracelen* and *Thomas G. Haight,* with whom *Messrs. Charles T. Russell* and *Frankland Briggs* were on the brief, for appellee.

The requirement that the Company overcome an admitted deficit in its annual earnings by revising retroactively the depreciation expense actually charged in the past is illegal, and would confiscate the property of the Company.

In order to get rid of the shortage below a fair annual return, the Board allows the Company, as an annual depreciation expense, a sum substantially less than the Board itself finds to be the actual, normal, currently accruing depreciation, until an alleged excess of $4,750,000 in its " depreciation reserve " shall have been " absorbed." The Company denies the existence of any excess. Moreover, the present balance in this account was built up prior to the Board's order under service rates lawful at the time when charged and during a period when no depreciation expense rates had been prescribed by the appellants or their predecessors in office.

There is no justification in law or equity for any such treatment of the Company's past expenses. *Newton* v. *Consolidated Gas Co.,* 258 U. S. 165; *Galveston Elec. Co.* v. *Galveston,* 258 U. S. 388; *Knoxville* v. *Water Co.,* 212 U. S. 1; *Monroe Gaslight Co.* v. *Public Utility Comm.,* 292 Fed. 139; *Garden City* v. *Garden City Tel. & Mfg. Co.,* 236 Fed. 693.

The Company's charges for depreciation expense are regulated by the Interstate Commerce Commission, and its jurisdiction is exclusive; the order of the Board is, therefore, invalid and its enforcement was properly enjoined.

MR. JUSTICE BUTLER delivered the opinion of the Court.

This is an appeal from a decree of the district court— three judges sitting, § 266, Judicial Code—which granted a temporary injunction restraining the enforcement of certain telephone rates.

The company owns and operates a telephone system in New Jersey, New York and Connecticut. In the territory served in New Jersey there is a number of local areas. Service between telephones in the same area is exchange service, and that between telephones in different areas is toll service. The latter includes both intrastate and interstate business. The system is used to give exchange and toll service to all subscribers. For about 10 years prior to the commencement of this suit the rates in New Jersey remained at substantially the same level. March 6, 1924, the company filed with the Board of Public Utility Commissioners, to take effect April 1, 1924, a schedule providing for an increase of rates for exchange service in New Jersey. The Board suspended the proposed rates pending an investigation as to their reasonableness. December 31, 1924, the increase was disallowed, and the company was required to continue to serve at the existing rates. The Board found that the value of the company's property in New Jersey, as of June 30, 1924, was $76,370,000; that a rate of return of 7.53 per cent. producing from $5,750,000 to $6,000,000 would be a fair return for that year; that the amount charged by the company in 1924 for depreciation, $3,452,000, was excessive, and that $2,678,000 was sufficient. And the Board found that net earnings in 1924 would be $4,449,000,—less than the fair return by at least $1,300,000.

The company's accounts are kept according to the uniform system of accounts for telephone companies prescribed by the Interstate Commerce Commission. Charges are made to cover the depreciation in the elements of the plant which for one cause or another will go out of use. These charges are made month by month against depreciation in the operating expense accounts, and corresponding credits are entered in the depreciation reserve account. When a unit or element of the property is retired, there is no charge to operating expense, but its original cost less salvage is charged to the reserve account. December 31, 1923, the company's books showed a credit balance in depreciation reserve accounts of $16,902,530. This was not set aside or kept in a separate fund, but was invested in the company's telephone plant. The Board prescribed a rule for the determination of depreciation expenses to be charged by the company in 1925 and subsequent years. It declared that the credit balance was more than required for the maintenance of the property, and directed that $4,750,000 of that amount be used by the company to make up deficits in any year when earnings are less than a reasonable return as found by the Board. And it said, " But having made such charges in the past, future charges beginning January 1st, 1925 may be deducted from the normal charge until such time as at least $4,750,-000 of the excess is absorbed as hereinafter provided." The effect of the order is to require that if total operating expenses deducted from revenues leaves less than a reasonable return in 1925 or a subsequent year, there shall be deducted from the expense of depreciation in that year and added to the net earnings a sum sufficient to make up the deficiency; then, by appropriate book entries, the resulting shortage in depreciation expense is to be made good out of the balance in the reserve account built up in prior years.

On the application for a temporary injunction, the company attacked the findings of the Board as to rate

of return, property value, and expense of depreciation. And it contended that the charges on account of depreciation in earlier years were not excessive, and that in any event the company could not be compelled to make up deficits in future net earnings out of the depreciation reserves accumulated in the past.

The record shows that the rates in effect prior to the temporary injunction were not sufficient to produce revenue enough to pay necessary operating expenses and a just rate of return on the value of the property. There is printed in the margin [1] a statement made by the Board and included in its decision, giving a comparison of re-

[1] Results under Present Rates—Estimated for the Year 1924.

| Revenues: | By Company (Exhibit P-14) | By Board, based on Exhibit C-34 modified |
|---|---|---|
| Exchange Revenues | $11,936,000 | $11,936,000 |
| Toll Revenues | 10,465,000 | 10,465,000 |
| Miscellaneous Operating | 257,000 | 257,000 |
| Total Telephone Revenue | $22,658,000 | [2]$22,658,000 |
| Expenses: | | |
| Traffic Expenses | $5,846,000 | $5,846,000 |
| Commercial Expenses | 2,309,000 | 2,309,000 |
| General and Miscellaneous Expenses | 548,000 | 548,000 |
| Uncollectible Operating Revenues | 150,000 | 150,000 |
| Rent and Other Deductions | [1]283,000 | 283,000 |
| Current Maintenance | [1]3,230,000 | 3,230,000 |
| Depreciation | 3,452,000 | 2,678,000 |
| Taxes | 2,170,000 | 2,200,000 |
| Licensee Revenue, Dr. | 965,000 | 965,000 |
| Total Telephone Expenses | $18,953,000 | $18,209,000 |
| Total Telephone Earnings | $3,705,000 | $4,449,000 |

[1] Include a certain portion of depreciation for right of way from clearing accounts.

[2] Omits concessions ($102,000) and interest during construction ($160,727) aggregating $262,727 in Exhibit C-34.

sults of operation in 1924 under these rates as found by the Board and as estimated by the company. And, in opposition to the motion for the temporary injunction, the Board submitted an affidavit containing a statement [2]

[2] Estimated Rate of Return During Year 1925 under Present Rate Schedule.

| | Plaintiff's depreciation rate | Board's depreciation rate | Compliance with order of Board |
|---|---|---|---|
| Telephone Revenues: | | | |
| Exchange Service........... | $13,281,000 | $13,281,000 | $13,281,000 |
| Toll Service.............. | 11,113,000 | 11,113,000 | 11,113,000 |
| Miscellaneous............ | 316,269 | 316,269 | 316,269 |
| Total Telephone Revenues................ | $24,710,269 | $24,710,269 | $24,710,269 |
| Telephone Expense: | | | |
| Current Maintenance .... | $3,453,400 | $3,453,400 | $3,453,400 |
| Depreciation and Amortization ................ | 4,128,000 | 3,314,716 | *683,430 |
| Traffic .................. | 6,404,465 | 6,404,465 | 6,404,465 |
| Commercial ............. | 2,657,000 | 2,657,000 | 2,657,000 |
| General and Miscellaneous | 589,166 | 589,166 | 589,166 |
| Uncollectibles............ | 140,000 | 140,000 | 140,000 |
| Taxes................... | 2,269,691 | 2,371,812 | 2,700,723 |
| Rent Expense and Deductions................. | 325,744 | 325,744 | 325,744 |
| Miscellaneous Deductions. | 56,813 | 56,813 | 56,813 |
| License Contract Expense. | 1,041,695 | 1,041,695 | 1,041,695 |
| Total Telephone Expense | $21,065,974 | $20,354,811 | $18,052,436 |
| Net Telephone Earnings | $3,644,295 | $4,355,438 | $6,657,833 |
| Average Cost, $86,401,736 | | | |
| % Return on Average Cost. | 4.22 | 5.04 | 7.71 |
| Defendant's Average Fair and Reasonable Value, $88,417,448 | | | |
| % Return on Value..... | 4.12 | 4.93 | 7.53 |

* Allowing a return of 6% on value of property depreciation and amortization expense will be $2,163.471.

which set forth in detail the estimated results for 1925 based on the same rates. The affidavit shows net addi-. tions to the company's property in New Jersey in 1924, amounting to more than $13,000,000; and the Board cal-culates the return on $88,417,448 as the reasonable value of the property. The calculation is made on three bases: (1) depreciation taken at the company's figure, $4,128,-000, (2) depreciation as found by the Board, $3,314,716, and (3) depreciation allowed by the Board's order, $683,430. The effect of the order is to deduct $2,631,-286 from operating expenses found by the Board prop-erly chargeable for depreciation in 1925. This deduction is made at the expense of the property of the company paid for out of depreciation reserves built up in prior years. And it has the same effect on net earnings as would the addition of the same amount of revenue received for service. On the basis of the company's estimate of de-preciation expense, the return is 4.12 per cent.; on the Board's estimate it is 4.93 per cent.; and by increasing net earnings $2,631,286, as directed by the order, it is made 7.53 per cent. It is conceded that unless, as directed by the Board, depreciation expense is reduced below what the Board itself found necessary, and net earnings are correspondingly increased, the rates cannot be sustained against attack on the ground that they are unreasonably low and confiscatory. Appellants do not contend that the rate of return from the intrastate business is or will be higher than that resulting from the company's busi-ness as a whole in New Jersey. And the record supports the claim of the company that the intrastate business, or that covered by the exchange rates complained of, is not relatively more profitable than the other business of the company.

It may be assumed, as found by the Board, that in prior years the company charged excessive amounts to depreciation expense and so created in the reserve account

balances greater than required adequately to maintain the property. It remains to be considered whether the company may be compelled to apply any part of the property or money represented by such balances to overcome deficits in present or future earnings and to sustain rates which otherwise could not be sustained.

The just compensation safeguarded to the utility by the Fourteenth Amendment is a reasonable return on the value of the property used at the time that it is being used for the public service. And rates not sufficient to yield that return are confiscatory. *Willcox* v. *Consolidated Gas Co.*, 212 U. S. 19, 41; *Bluefield Co.* v. *Public Service Commission,* 262 U. S. 679, 692. Constitutional protection against confiscation does not depend on the source of the money used to purchase the property. It is enough that it is used to render the service. *San Joaquin Co.* v. *Stanislaus County,* 233 U. S. 454, 459; *Gas Light Co.* v. *Cedar Rapids,* 144 Ia. 426, 434, affirmed, 223 U. S. 655; *Consolidated Gas Co.* v. *New York,* 157 Fed. 849, 858, affirmed 212 U. S. 19; *Ames* v. *Union Pacific Railway Co.,* 64 Fed. 165, 176. The customers are entitled to demand service and the company must comply. The company is entitled to just compensation and, to have the service, the customers must pay for it. The relation between the company and its customers is not that of partners, agent and principal, or trustee and beneficiary. Cf. *Fall River Gas Works* v. *Gas & Electric Light Com'rs,* 214 Mass. 529, 538. The revenue paid by the customers for service belongs to the company. The amount, if any, remaining after paying taxes and operating expenses, including the expense of depreciation, is the company's compensation for the use of its property. If there is no return, or if the amount is less than a reasonable return, the company must bear the loss. Past losses cannot be used to enhance the value of the property or to support a claim that rates for the future are confiscatory. *Galveston Electric Co.* v. *Galveston,*

258 U. S. 388, 395; *Georgia Ry.* v. *R. R. Comm.*, 262
U. S. 625, 632. And the law does not require the company to give up for the benefit of future subscribers any
part of its accumulations from past operations. Profits
of the past cannot be used to sustain confiscatory rates
for the future. *Newton* v. *Consolidated Gas Co.*, 258
U. S. 165, 175; *Galveston Electric Co.* v. *Galveston, supra,*
396; *Monroe Gaslight & Fuel Co.* v. *Michigan Public
Utilities Commission*, 292 Fed. 139, 147; *City of Minneapolis* v. *Rand*, 285 Fed. 818, 823; *Georgia Ry. & Power
Co.* v. *Railroad Commission*, 278 Fed. 242, 247, affirmed
262 U. S. 625; *Chicago Rys. Co.* v. *Illinois Commerce
Commission,* 277 Fed. 970, 980; *Garden City* v. *Telephone
Company*, 236 Fed. 693, 696.

Customers pay for service, not for the property used
to render it. Their payments are not contributions to
depreciation or other operating expenses, or to capital of
the company. By paying bills for service they do not
acquire any interest, legal or equitable, in the property
used for their convenience or in the funds of the company.
Property paid for out of moneys received for service belongs to the company, just as does that purchased out of
proceeds of its bonds and stock. It is conceded that the
exchange rates complained of are not sufficient to yield
a just return after paying taxes and operating expenses,
including a proper allowance for current depreciation.
The property or money of the company represented by
the credit balance in the reserve for depreciation cannot
be used to make up the deficiency.

*Decree affirmed.*

MR. JUSTICE STONE took no part in the consideration
of this case.