**CITY OF LEXINGTON et al., Appellants,**

v.

**LEXINGTON WATER COMPANY,**
**Appellee.**

Court of Appeals of Kentucky.

Oct. 9, 1970.

Earl S. Wilson, Cecil F. Dunn, Kincaid, Wilson, Schaeffer, Trimble & Hembree, Lexington, Richard Smith, Corp. Counsel, Lexington, Morris E. Burton, Frankfort, for appellants.

C. Gibson Downing, Stoll, Keenon & Park, Lexington, Louis Cox, Hazelrigg & Cox, Frankfort, for appellee.

STEINFELD, Judge.

Privately owned Lexington Water Company, a wholly owned subsidiary of the American Water Works Company, Inc., on March 31, 1967, petitioned the Public Service Commission for an increase in rates. The city protested on the ground that for rate purposes the consumers were entitled to benefit from an admitted profit of $2,415,846 which the utility had made on a 1964 sale of land. It contended, but the water company denied, that this land had been acquired by condemnation or threat thereof. The commission held that the gain should be considered and amortized over a period of 15 years. The company appealed and the circuit court reversed. The city has appealed. We affirm.

Between 1897 and 1908 the water company acquired the controversial property to collect water for reservoirs utilized in supplying its customers in and near Lexington. When the reservoirs became inadequate they were retired from service and removed from the rate base. This land was sold and water was obtained through pipelines extending to the Kentucky River. The city introduced evidence of the details of the sale, the corporate schemes devised for the sale of the property, and showed that the profit was paid to the stockholder of the company in the form of a dividend.

It is our opinion that the schemes, methods and details of the sale, the disposi-

tion of the profits and whether the property was acquired by threats of use of the power of eminent domain are irrelevant. The overriding and sole justiciable issue here is whether the sale profit of "non-revenue producing real estate which had been retired from public service" belonged to the shareholder or inured to the benefit of the customers.

The commission in its opinion and order stated:

"The subject property was not purchased by the utility as a land speculation but it was acquired for providing utility service to the public over the years and was subject to acquisition by condemnation. Inasmuch as utility property necessary for rendering service to the public is not subject to sale at the option of the utility, but must be continued in service as long as needed to provide that service, any loss in service value of such property would properly be considered a cost of providing service and, in the case of depreciable property, is recovered through depreciation."

\* \* \* \* \* \*

"If it is proper to recover losses of non-depreciable property through amortization, then conversely, it should be proper to amortize gains on such property."

In reversing the circuit court opined:

"Having contributed nothing to its acquisition and having acquired no interest therein, the ratepayers assumed no risk in its disposition whether it be profit or loss. The statement in the majority opinion of the Commission that future ratepayers could be compelled to reimburse the company if such property had been sold at a loss borders on the ridiculous. Having assumed no risk in the loss on the sale of the property of the company, conversely the ratepayers acquired no claim to the profits therefrom."

Appellants cite New York Water Service Corporation v. Public Service Commission, 12 A.D.2d 122, 208 N.Y.S.2d 857 (1960). That case can readily be distinguished because of the difference in accounting methods. The New York Public Service Commission had adopted a system of accounts in which land sold at a loss was debited to the depreciation reserve account and land sold at a profit was credited to that account. The New York court held that the rate base was thus properly increased or reduced affording the company protection from a loss in the sale of land used in its operations, therefore, it was reasonable and proper to pass profits made thereby onto the consumers.

KRS 278.220 authorizes the Kentucky Public Service Commission to establish a uniform system of accounts to be kept by utilities and to "prescribe the manner in which such accounts shall be kept." Pursuant to that statute the commission adopted the Uniform System of Accounts Prescribed by the National Association of Railway and Utility Commissioners. Under that system it was provided that a loss upon the sale of land is charged directly to the surplus account—to the shareholders. A profit is credited in the same manner. The water company followed this accounting system.

Appellants also rely upon Mississippi Public Service Commission v. Hinds County Water Company, Miss., 195 So.2d 71 (1967), in which the company formed several subsidiary corporations to enable it to serve customers in outlying areas. It loaned money to those subsidiaries charging them interest for the use of the funds. It was argued there that had the subsidiaries not been formed profits would have been realized directly from service the parent company would have rendered to these outlying areas. The commission treated the interest income as if it was direct income from customers of the utility, which holding was affirmed. We see no factual analogy.

Also relied upon by appellants is In Re: Wyoming Public Service Commission, Wyo., 40 P.U.R.3d 509 (1961), in which

the Wyoming Commission had authorized the sale of operating producing gas properties depreciating or depletable on the condition that the profit be treated as non-operating utility income. The utility failed to so treat that profit whereupon the commission ordered compliance. That case did not reach the courts. It is inapplicable.

Re: Plainfield—Union Water Co., 57 N.J.Super. 158, 154 A.2d 201 (1959), is cited but that court held that the commission had failed to clearly state its reasons for its action and it remanded for further proceedings. The opinion does not discuss any sale of land, the issue now before us.

Other cases which we have considered are cited by appellants but we deem it unnecessary to discuss them. They do not convince us that the trial court was in error.

In Board of Public Utility Commissioners v. New York Telephone Company, 271 U.S. 23, 46 S.Ct. 363, 70 L.Ed. 808 (1926),[1] the company had used a rate of depreciation greater than required for its proper protection and there was thereby created an excess fund which was termed "over-accruals". It was held in that rate case that the company was not required to transfer "over-accruals" to earnings in subsequent years. In the opinion it was stated "Customers pay for service, not for the property used to render it. Their payments are not contributions to depreciation or other operating expenses or to capital of the company. By paying bills for service they do not acquire any interest, legal or equitable, in the property used for the convenience or in the funds of the company."

These principles were again expounded In Re: V. C. Transit System, Inc., 48 P.U.R.3d 385 (1963), from Washington, D. C., in which opinion reference was made to Board of Public Utility Commissioners v. New York Telephone Company, supra. The Washington opinion stated: "It is a cardinal principle of regulatory law that a utility is not entitled to recover through depreciation charges or other accounting devices, its investment in land." It was held that ratepayers may have a claim to depreciable property, at least to the extent of the depreciation reserves, but that no such claim could be directed to land.

Profit made from the sale of non-depreciable land no longer used in serving customers is not an ingredient to be considered in fixing rates. The customers had no interest in the profit realized on the sale—it belonged to the stockholder.

Other issues present in the trial court but not argued here are reserved.

The judgment is affirmed.

All concur, except REED, J., who did not sit.

---

1. Referred to on a related subject in City of Covington v. Public Service Commission, Ky., 313 S.W.2d 391 (1958).