WALKER, Presiding Justice,
dissenting:
I feel compelled to dissent from the holding of the majority that the Chancery Court of Hinds County, Honorable Joe G. Moss presiding, incorrectly held that the order of the Mississippi Public Service Commission dated September 8, 1982, which denied a rate increase to South Central Bell Telephone Company was “contrary to the manifest weight of the evidence and for that reason must be reversed and remanded to the Public Service Commission.”
The majority opinion states:
We carefully have studied the chancellor’s opinion and agree with appellants that the basic issues were not properly considered or determined by the chancellor. The first and foremost serious error was his finding of fact that “The rate base was found to be $909,568,666 (sic $909,569,666).” With deference, this is not accurate. As we heretofore have seen, the commission did not find any rate base whatever, but on the other hand, found that under this essential element and others, the company did not meet its burden of proof. The chancellor obviously followed the contention of ap- *1141 pellee that the rate base in the amount they were contending for was accepted by the commission because of Dr. Holt’s testimony. At no time was this figure found to be accurate....
In my opinion that statement is contrary to the evidence as found in the fourteen-volume record of this case covering in excess of 2,000 pages of testimony plus an additional twenty-three volumes of exhibits.
On April 6, 1982, the company filed a notice of changes in certain of its rates for telephone service to become effective in thirty days. The proposed rates were designed to produce additional annual revenues of approximately $98,200,000. The commission suspended the proposed rates for the maximum period authorized by law. As authorized by statute, on May 7, 1982, the company placed the major portion ($94,-000,000) of the proposed rates into effect under refunding bond.
Thereafter, the commission held public hearings on June 28 and 29, and August 30 and 31 and September 1, 1982.
Pursuant to Public Service Commission order, prior to the public hearings, the company filed extensive written testimony and exhibits.
The Department of Defense intervened on behalf of all federal agencies and formally requested extensive information, which was promptly furnished by the company.
The Mississippi Legal Service Coalition (MLSC) intervened on behalf of “low-income” persons and was represented by counsel. The MLSC requested and obtained extensive information from the company.
The Mississippi Attorney General intervened and was represented at all public hearings. The Attorney General requested extensive information and data, which was promptly furnished by the company, and the Attorney General cross examined numerous company witnesses.
These various requests included information with respect to all aspects of the financial condition of South Central Bell Telephone Company.
The Public Service Commission engaged the services of two experienced public utility consultants, Dr. John Legler and Dr. Robert N. Holt. These consultants, in connection with the regular staff of the Public Service Commission, conducted an examination of the company’s operations and requested voluminous information in addition to the information contained in the company’s evidence. The company complied with all such requests.
The Public Service Commission acknowledges in its present brief, that the telephone company presented extensive evidence covering all relevant aspects of its operations, including accounting practices, rate schedules, inter-corporate relationships with the Bell system, revenues, expenses, taxes, rate base, rate design, cost of debt capital, cost of equity capital, capital structure, and overall required fair rate of return.
At no time did a single witness for any of the opponents to the rate increase, including the Public Service Commission experts, members or attorneys, question the propriety of the method by which the company’s suggested rate base of $924,178,000 was reached, except that the Public Service Commission expert, Dr. Holt, recommended certain adjustments to this figure which had the effect of reducing the rate base to $909,569,666. In its final order, the commission adopted all of Dr. Holt’s adjustments that resulted in reducing the rate base without further questioning its accuracy. In fact, on redirect examination of Dr. Holt (Record P. 975-981), counsel for the Public Service Commission introduced into evidence an exhibit that had been prepared by one of their experts, Dr. Holt, which showed the adjusted rate base recommended by Dr. Holt to be $909,569,666.
Further, the Public Service Commission made a finding of fact that a return of 11.85% on the adjusted rate base was necessary to yield a fair rate of return to the telephone company. Therefore, using *1142 these figures, i.e., figures placed into evidence by the company’s own experts, Dr. Holt and Dr. Legler, it is evident that the company demonstrated that it needs and is entitled to receive additional revenues of at least $61,000,000. [See Chart attached hereto as Exhibit “A”.] Once the Mississippi Public Service Commission found that the 11.85% rate of return was necessary in order to yield a fair rate of return on the adjusted rate base now accepted by all of the parties to this lawsuit, then anything less than that would be confiscatory.
The rule established by the United States Supreme Court was succinctly stated in Alabama P.S.C. v. Southern Bell Tel. & Tel. Co., 253 Ala. 1, 42 So.2d 655, 662-63 (1949):
We have not reached a point where it is well to consider and define the meaning of “confiscation” in order that our inquiry may be understood. In this consideration we should remember the principle that the property of a public utility, although devoted to the public service and impressed with a public interest, is still private property. Neither the property nor its use can be taken for a compulsory price which falls below the measure of fair and just compensation. In the ease of Board of Public Utility Commissioners v. New York Telephone Company, 271 U.S. 23, 32, 46 S.Ct. 363, 366, 70 L.Ed. 808, 812, the Supreme Court of the United States said:
“The just compensation safeguarded to the utility by the Fourteenth Amendment is a reasonable return on the value of the property used at the time that it is being used for the public service, and rates not sufficient to yield that return are confiscatory. * ‡ »
Simple mathematical computations demonstrate that the company’s net operating income of $76,231,786 (as established by Dr. Legler, one of the Public Service Commission’s experts) available under the old rates would amount to a return of only 8.38%, far below the required 11.85% required to yield a fair return to the telephone company. It is evident, therefore, that a return of only 8.38% is confiscatory and violative of the United States Constitution.
If the Public Service Commission was not satisfied with the rate design, after determining the percentage (11.85%) of the adjusted rate base, necessary to yield a fair return, then it should have utilized the authority granted it under Mississippi Code Annotated section 77-3-39(5) (Supp.1984) which provides:
If, after such hearing, the commission shall find any such rate or rates to be unjust, unreasonable, or unreasonably discriminatory, or in anywise in violation of the law, the same shall be set aside, and the commission shall determine and fix by order such rate or rates as will yield a fair rate of return to the public utility for furnishing service to the public and shall make and file its conclusions and findings of fact supporting such order_ (Emphasis added).
This the commission failed to do.
By reversing the order of the chancery court, it is apparent that the majority opinion as well as the Mississippi Public Service Commission overlooked the testimony of the commission’s own expert witnesses who adjusted the telephone company’s figures and arrived at their recommended rate base and recommended the percentage (11.85%) to be applied to that in order to provide the telephone company a fair rate of return that would not be confiscatory and unlawful. See Mississippi Public Service v. Mississippi Power Company, 337 So.2d 936, 939 (Miss.1976).
The availability of good telephone service is absolutely necessary to the prosperity of this State and the welfare of the citizens, but cannot be provided unless adequate revenues are allowed the telephone company by and through a fair rate of return on its investment.
In my opinion, the judgment of the chancery court holding that the Public Service Commission’s order denying any rate in *1143 crease was contrary to the overwhelming weight of the evidence and should be affirmed, and this matter remanded to the Public Service Commission in accordance therewith.
PRATHER and ROBERTSON, JJ., join this dissent.
EXHIBIT “A”
SOUTH CENTRAL BELL
Rate Base Per Company $924,178,000 Income Available Per Company (with Deferred Taxes and ITC= $71,857,000
Proposed Adjustments:
1. Consolidated Tax Savings 935,358
2. Excess Deferred Taxes + 644,666 + 644,666
3. IDC + 2,945,329
4. Customer Deposits - 3,908,000 150,567
5. Pre-1971 ITC - 1,469,000
6. Working Capital - 9,876,000
Adjusted Rate Base $909,569,666 Adjusted $76,231,786 Net Income Available
Revenue Requirement:
Rate Base x 11.85%
909,569,666 x .1185 = 107,784,005
Income Available 76,231,786
Income Deficiency 31,552,219
Tax Factor .515197
Revenue Required 61,243,017