464 So.2d 1133 (1984)
MISSISSIPPI PUBLIC SERVICE COMMISSION, et al.
v.
SOUTH CENTRAL BELL TELEPHONE COMPANY.
No. 55347.
Supreme Court of Mississippi.
December 5, 1984.
As Modified on Denial of Rehearing March 13, 1985.
Edwin Lloyd Pittman, Atty. Gen., Frank Spencer and Carolyn B. Mills, Sp. Asst. Attys. Gen., Jackson, Maurice Dantin, Dantin & Dantin, Columbia, Bennett E. Smith, Jackson, Lewis Burke, Vicksburg, Kim T. Chaze, Hattiesburg, Alfred J. Chiplin, Jr., Jackson, George Culpepper, Meridian, for appellants.
*1134 George H. Butler, Lawrence J. Franck, Butler, Snow, O'Mara, Stevens & Cannada, A.S. Povall, Jr., Jackson, Roger M. Flynt, Jr., John M. McCullouch, Birmingham, Ala., for appellee.
En Banc.
BOWLING, Justice, for the Court:
This cause involves an appeal from the May 7, 1982, order of the Mississippi Public Service Commission [MPSC] denying appellee South Central Bell Telephone Company [SCB] a requested rate increase that had been placed in effect under a refunding bond pursuant to the existing statutes.
SCB appealed the order of the MPSC to the Chancery Court of Hinds County. That court reversed the order of the MPSC and remanded the cause to the commission directing that it allow SCB at least a part of the requested rate increase sufficient to permit the company a rate of return of 11.85%.
Appeal was taken to this court by the Attorney General for the State of Mississippi, the Public Service Commission and Mississippi Legal Services Coalition contending that the Hinds County Chancellor erroneously reversed the commission's order. We agree with the contentions of the appellants for the reasons hereinafter discussed. Consequently, we reverse the order of the chancellor, reinstate the original order of the MPSC and remand the cause to the commission for appropriate further actions.
A basic consideration in this cause is "why does this state and other states have a public service commission to regulate monopolistic utilities and what are the duties and responsibilities of the commission?"
The public service commission is an arm of the legislature. Mississippi Public Service Commission v. Mississippi Valley Gas, 327 So.2d 296 (Miss. 1976); United Gas Corporation v. Mississippi Public Service Commission, 240 Miss. 405, 127 So.2d 404 (1961); Mississippi Public Service Commission v. Home Telephone Company, 236 Miss. 444, 110 So.2d 618 (1959); and Southern Bell Telephone & Telegraph Co. v. Mississippi Public Service Commission, 237 Miss. 157, 113 So.2d 622 (1959).
In setting up the MPSC, the legislature provided "Subject to the limitations imposed in this article and in accordance with the provisions hereof the public service commission shall have exclusive original jurisdiction over the intrastate business and property of public utilities... ." [MCA § 77-3-5 (1972)].
The legislature wisely has provided personnel and funds for the operation of the three-man public service commission. For example, the budget for that commission including its 115 full-time employees and staff members, for the current year is approximately $3,000,000 more than the budget for this nine-man court and its limited staff. The reason for this is obvious. The many staff members of the public service commission, in addition to those hired under the contractual services budget allowances, permits and indeed requires the public service commission to have experts available at all times in all fields of utility regulations and necessary implementation thereof, such as finance, corporate structure, etc. This establishment and extension of the commission, as an arm of the legislature, has resulted in certain rules, regulations and principles of law governing the actions of the commission. These principles of law repeatedly have been emphasized by this Court over the years. In order to put a further discussion of our actions in this particular case in perspective, we need to list some of those established principles.
In submitting a request to the public service commission for a rate increase, the utility involved has the burden of proving by substantial evidence that it clearly is entitled to the requested increase. State of Mississippi, ex rel., etc. v. Miss. Public Service Commission, 435 So.2d 608 (Miss. 1983); Mississippi Public Service Commission v. Mississippi Power Company, 429 So.2d 883 (1983); Mississippi Public *1135 Service Commission v. Mississippi Power Company, 337 So.2d 936 (Miss. 1976); and Southern Bell Telephone & Telegraph Company v. Mississippi Public Service Commission, 237 Miss. 157, 113 So.2d 622 (1959).
It is established that the order of the regulatory body  the public service commission  presumptively is considered valid. In Loden v. Mississippi Public Service Commission, 279 So.2d 636 (Miss. 1973), we said:
As we have held many times, the findings of the public service commission are prima facie correct and as a reviewing court, we will not substitute our judgment for the judgment of the commission. We are legally bound to uphold that finding of the commission because there is substantial evidence in the record supporting such findings and the ruling of the commission is not capricious, arbitrary or manifestly against the evidence.
The public service commission, with its expertise, is the trier of facts and within this province it has the right to determine the weight of the evidence, the reliability of estimates and the credibility of the witnesses. The commission is free to accept or reject recommendations of any of the witnesses. State of Mississippi, ex rel. v. Mississippi Public Service Commission, 435 So.2d 608 (Miss. 1983); Mississippi Public Service Commission v. Mississippi Power Company, 429 So.2d 883 (Miss. 1983); Mississippi Public Service Commission v. Mississippi Power Company, 337 So.2d 936 (Miss. 1976); Capital Electric Power Association v. Mississippi Power & Light Company, 216 So.2d 428 (Miss. 1968); and Southern Bell Telephone & Telegraph Company, v. Mississippi Public Service Commission, 237 Miss. 157, 113 So.2d 622 (1959).
The reasonableness of the rates charged, or to be charged, by a public utility is not determined by definite rules and legal formulas, but is a fact question requiring the exercise of sound discretion and independent judgment in each case. Miss. Pub. Serv. Comm'n v. Miss. Power Co., supra; and Southern Bell Tel. & Tel. Co. v. Miss. Pub. Serv. Comm'n, supra.
The rules and requirements of appellate review of a commission order clearly have been defined. First, we have the requirement set up by the legislature in regard to its administrative arm, the commission. MCA § 77-3-67 (1972), authorizing a court appeal from the commission's order requires that:
The order shall not be vacated or set aside either in whole or in part, except for errors of law, unless the court finds that the order of the commission is not supported by substantial evidence, is contrary to the manifest weight of the evidence, is in excess of statutory authority or jurisdiction of the commission, or violates constitutional rights.
This court has followed the foregoing legislative mandate and continues to do so in the present case. In the recent case of Mississippi Public Service Commission v. Mississippi Power Company, 429 So.2d 883 (Miss. 1983), which followed the legislative mandate, it is stated:
The sole question presented for decision is whether or not the action of the commission was arbitrary, not supported by substantial evidence, or was manifestly against the evidence.
Our decisions also hold that the rate-making function is legislative in character and not the function of a court. It is beyond question that the function of rate making in this state is purely legislative in character and a court is without power to fix rates charged by a public utility. We firmly have established this rule in a number of cases. Mississippi Public Service Commission v. Hinds County Water Company, 195 So.2d 71 (Miss. 1967); United Gas Corporation v. Mississippi Public Service Commission, 240 Miss. 405, 127 So.2d 404 (1961); Mississippi Public Service Commission v. Home Telephone Company, 236 Miss. 444, 110 So.2d 618 (1959); and Southern Bell Telephone & Telegraph Co. v. Mississippi Public Service *1136 Commission, 237 Miss. 157, 113 So.2d 622 (1959).
We are compelled to conclude that the inhabitants of the State of Mississippi, through its elected legislative branch, have extended the three-member public service commission's powers to great dimensions. These arms of the legislature, as do legislators, are subject to the will of the people every four years in order to retain their power grant. In the event any should, through inadvertence or otherwise, let politics, either individual or corporate, enter into the decision making, the ballot box is the primary remedy. Nowhere under the principles discussed above do we find in this case any indication that politics has been involved.
On April 6, 1982, appellee, SCB, filed its notice to increase rates in the total sum of $98,200,000. The portions of its rate system to be affected allegedly were local exchange area services, service connection charges, zone rates, coin telephone charges, grouping service charges, various terminal equipment and restructuring intrastate toll and intrastate WATS lines throughout its service area. SCB made the general contention that it was entitled to rate increases in these areas because of three basic reasons; namely: inflation, investor incentive, and uncertainty. Pending MPSC hearings, SCB placed $94,000,000 of the proposed rate increases into effect by posting a $50,000,000 bond.[1] The commission held three public hearings on June 28 and 29, August 30 and 31 and September 1, 1982. These hearings resulted in the order of September 8, 1982.
At the time the hearings began, the commission had before it an unusual picture. First, the last rate increase granted SCB was by order dated August 29, 1980, resulting in the company receiving a rate increase of $38,600,000. The present increase controversy was started approximately two months after the decree in federal court, commonly known as "divestiture". Under the terms of this divestiture, American Telephone & Telegraph Company would divest itself of its sole ownership of its twenty Bell System telephone companies existing throughout the United States. One of these companies was South Central Bell, composed of five states, Mississippi, Alabama, Louisiana, Tennessee, and Kentucky. The break up of this Bell System, according to the February 1982 federal consent decree, was to become effective on January 1, 1984. At that time appellee SCB became wholly owned by Bell South Company. At the time of the rate increase request with which we are concerned, and at the time of the commission's hearings, all stock of SCB was owned by AT & T. However, as stated, it was known at that time that this in effect was a temporary arrangement. It suffices to say that the cross examination during the hearings of SCB's witnesses attempted to show that the large rate increase, requested shortly after divestiture was granted, was in large part an effort to assure certain rate design increases prior to the completion of divestiture. Nothing in the above statement affects the decision of this case. We refer to it only to show the picture before the commission during the hearings in 1982. The rate increase order of the commission dated August 29, 1980, found that the rate base of the company was $793,914,000. Of course, the rate base is in reality, and as required by law, considered the reasonable value of the company's property used in rate making procedures. For the benefit of those not involved in such matters, the two primary topics in those procedures are the "rate base" as stated above and the "rate of return" on that rate base. In order to arrive at a total rate increase, it is necessary for the commission to make a determination of both these figures. The fair rate of return is then compared to "net operating income", with any deficiency being the actual rate increase.
Pursuant to the application in the present controversy, that is the notice filed on April 6, 1982, for an increase of $98,200,000 *1137 and the evidence presented by the company at the commission hearings, the company contended that its rate base had increased to $924,178,000, which was an increase of $130,264,000 from the 1980 rate base as found by the commission. One of the first duties of the commission was to ascertain whether or not SCB met its burden of proving the increased rate base.
The three hearings resulted in a very lengthy record. The primary controversy in the appeal to the chancery court of Hinds County centered around the testimony of MPSC witnesses Dr. Robert Holt and Dr. John Legler. Dr. Holt, after studying the proposals propounded by SCB, recommended six adjustments to the proposed items making up the alleged rate base. These adjustments were considered by the commission and it found Dr. Holt to be correct in his discussions of these items. The adjustments were in the following areas: (1) consolidated tax savings, (2) excessive deferred taxes, (3) interest due on construction, (4) customers' deposits, (5) pre-1971 investment tax credits, and (6) working capital. The commission found that Dr. Holt was also correct in the adjustments which added $4,678,949 to the net income available to the company. His opinion also was that these items reduced the rate base. However, Dr. Holt did not do that which appears to have led to this entire appeal. He did not find a rate base to which the company was entitled, but in making his calculations, he apparently assumed the figure suggested originally by the company  that is, $924,178,000. Nowhere did Dr. Holt verify or attempt to verify the accuracy of that figure.
Regarding the rate of return, there were a number of percentages given by a number of witnesses. Dr. Legler in his testimony was of the opinion that the utility company was entitled to a return of 11.85% of a proper rate base. He did not establish any rate base.
We now need to look at the order of the MPSC to see what it really did decide  that is, the real basis for consideration in this appeal. Under heading "RATE OF RETURN AND CAPITAL STRUCTURE", the commission's order states as follows:
The Commission heard conflicting testimony on rate of return and capital structure. The Company's primary witness on rate of return was Mr. J.D. Matheson, an experienced and seasoned Vice-President of the Company. It also presented testimony of two other witnesses, one in chief and one in rebuttal, both of whom stated that they were in the securities business. The staff's primary witness on rate of return and capital structure was Dr. John Legler, whose academic and professional credentials as well as his experience were impressive. Also testifying as an intervenor on behalf of the Department of Defense was Mr. Mark Langham. His background and testimony was likewise noteworthy.
Mr. Matheson urged a return on equity in the range of sixteen percent to eighteen percent and adopted a hypothetical capital structure of forty-five percent debt and fifty-five percent equity. His recommended overall return on assets or rate base was 13.25 percent.
In his testimony Dr. Legler recommended that the Commission set the cost of equity at fifteen percent. He applied the recommendation to a hypothetical capital structure of forty-five percent debt and fifty-five percent equity and achieved a weighted average cost of capital of 12.3 percent. He also applied the recommendation based on the Consolidated Bell System capital structure and this resulted in a weighted average cost of capital of 12.1 percent. Dr. Legler recommended that the Commission accept the overall return of 12.1 percent based on the Consolidated Bell System capital structure. On cross-examination Dr. Legler revised his testimony in light of recent economic developments and reduced his recommendation by one-fourth point or to 11.85 percent.
Mr. Langham testified that cost of equity capital to the Bell System is between 13.5 percent and 15 percent. He predicated his opinion on two (2) separate and *1138 independent studies  a study of relative risk and earnings and a market value study. He recommended that the Commission utilize a hypothetical capital structure of fifty percent equity in the proceeding and his explanation during cross-examination in support of changing the previous hypothetical capital structure of fifty-five  forty-five was noteworthy. Mr. Langham concluded that the overall cost of capital to the South Central Bell Telephone Company is between 11.3 percent and 12 percent and he recommended the mid-point range of 11.6 percent.
The Commission recognizes that the opinions and recommendations of the witnesses on rate of return are all predicated on the judgments of the witnesses and that it is the Commission's responsibility to determine which is most reasonable and acceptable. After due deliberation the Commission accepts the revised recommendation of Dr. John Legler on rate of return and finds the Company's weighted average cost of capital to be 11.85 percent.
Immediately after the above finding the commission established another heading styled "FAILURE TO MEET BURDEN OF PROOF" under which it said as follows:
The Commission has had no great problem in evaluating the testimony and evidence presented and determining which is the most acceptable. What causes the Commission extreme difficulty is the lack of evidence presented to it. The testimony of numerous public witnesses and the thousands of letters and petitions of a concerned public reflect an imposing burden being placed upon those who can least afford it. The records reveal the increases for basic services in excess of fifty percent. The evidence is totally void of explanation for the rate design which so savagely strikes many people. Throughout the hearing there was ever looming the uncertain spector of divestiture. The Company claims it would have no impact on the result of its request for increases. Yet, the increase obviously was placed upon the ratepayer who would not in the future be subject to the competitive environment anticipated by divestiture.
The Commission finds that the company had the burden of proving the reasonableness of its total request. The Company stated that the three (3) basic reasons for the request of additional revenues were (1) inflation, (2) investor demand for incentives and (3) uncertainty. The Commission finds from the evidence that the inflationary trend has been reversed, that the investor demand for incentives is reducing in the present economic climate and that uncertainty cannot justify rate increases. The enormity of its request, the impact on its ratepayers as reflected by their response and the uncertainty of divestiture as well as the recession and economic instability of the Country at the present time intensifies the burden of the Company to prove its need and the reasonableness of its request. The Commission finds that the Company has failed to meet this burden. The Commission finds that the company's request for an increase in the rates and charges applicable to the rendition of local exchange service, service connection charges, zone rates, coin telephone charges, grouping service charges, various terminal equipment and restructuring of intrastate toll and intrastate WATS throughout its service area within the State of Mississippi, is not supported by the evidence and should be denied.
In its concluding "ORDER OF THE COMMISSION", it held as follows:
Pursuant to the comments, conclusions, opinions and findings hereinabove stated, it is, therefore, hereby ordered by the Commission that:
(A) The Company's request of an increase in the rates and charges applicable to the rendition of local exchange service, service connection charges, zone rates, coin telephone charges, grouping service charges, various terminal equipment, and restructuring of intrastate toll and intrastate WATS is not supported by the evidence.

*1139 (B) The schedule of rates and charges and proposed changes as herein filed by the Company is found to be unfair and unjust and results in unreasonable, excessive and discriminating compensation to the Company and that same be and are hereby denied.
(C) The Company shall refund to each of its customers the revenues collected by it under the rate schedules in effect under bond, plus interest at the rate allowed by law. Such refund shall be paid by check.
(D) Within thirty (30) days after completion of its aforesaid refunds, the Company shall file its certificate of compliance stating that all refunds have been made and showing the amounts refunded by type of service. Upon the filing of such certificate, and the approval thereof by the Commission, the principal and surety on their refund bond heretofore filed by the Company shall be discharged.
In its appeal to the Hinds County Chancery Court and the subsequent appeal to this Court, appellee SCB, in effect concedes that it was not entitled to a rate increase of $98,200,000. Its argument has been reduced to a claim that it is at least entitled to an increase of $61,243,017. It uses the evidence presented by Dr. Holt in this contention, wherein Dr. Holt "assumed" the company's requested rate base figure of $924,178,000, which he adjusted to $909,569,666. The company contends that as the commission found it was entitled to a rate of return of 11.85%, that after the adjustments made by Dr. Holt, there is still an income deficiency of $31,552,219, and that after adding a "tax factor" of .515197 there is the resulting increase of $61,243.017.
After the company's argument before the chancellor, the latter, as stated, issued his order remanding the cause to the commission and ordering that it work out a rate schedule giving the company a rate of return of 11.85%. We carefully have studied the chancellor's opinion and agree with appellants that the basic issues were not properly considered or determined by the chancellor. The first and foremost serious error was his finding of fact that "The rate base was found to be $909,568,666." With deference, this is not accurate. As we heretofore have seen, the commission did not find any rate base whatever, but on the other hand, found that under this essential element and others, the company did not meet its burden of proof. The chancellor obviously followed the contention of appellee that the rate base in the amount they were contending for was accepted by the commission because of Dr. Holt's testimony. At no time was this figure found to be accurate. A further reading of the chancellor's opinion shows that his finding, that the commission's order was contrary to the manifest weight of the evidence, was based on his finding that "the rate base was found."
Another point that weakens appellee's arguments is that the entire controversy was presented based on a projected test year between May 1, 1982, and April 30, 1983. As heretofore shown the final order after the three hearings was in September 1982. At that time, over four months of the actual projected test year had passed. We do not find any proof of what occurred during that time that was considered during the hearings or in the commission order. In the recent case of State of Mississippi, ex rel., etc. v. Mississippi Public Service Commission, supra, we discussed the standard of proof required when the utility is basing its rate increase on a projected year, not yet having arrived, including whatever uncertainty existed. In the above cited case, only three months of actual use had passed. We recommended that the results of the first three months of actual use be considered. As stated, in the present case, more than four months had passed and the actual use during that period of time was not proven.
At the outset we stated that the three reasons given for the large rate increase were inflation, investor incentives and uncertainty. We have already seen the commission's discussion of these three reasons *1140 in its order. The uncertainty at the time the rate increase petition was filed, approximately two months after the federal divestiture decree, of course, is now a reality. In our opinion, we may take cognizance of the elimination of uncertainty as of January 1, 1984, after which appellee has been owned solely by Bell South rather than American Telephone & Telegraph Company. While that was taking place, the public records show that appellee was granted increases within the space of three months of $25,149,000 in December 1983 and $41,703,000 on March 16, 1984. We mention this as a point bolstering the commission's finding that appellee did not meet its burden of proof in 1982 under its condition of "uncertainty." We also take notice that in 1982 the economic conditions of the country were improving. In regard to the third reason of investor incentive, when the petition for the rate increase was filed, it had already been determined that American Telephone & Telegraph Company after 1983 would not be the sole stock owner of appellee, but would own no stock of appellee.

CONCLUSION
Returning to the discussion at the outset regarding the establishment of the public service commission, its duties, responsibilities, the requirements regarding the burden of proof before the commission and the up-hill climb of those dissatisfied with the commission's orders, we are forced to hold that the learned chancellor of Hinds County was in error. From the record in this case, it is our opinion that an appellate court cannot hold that the commission erroneously found that appellee failed to meet its burden of proof. We therefore reverse the Order of the Chancery Court of Hinds County on appeal and reinstate the Order of the Mississippi Public Service Commission, which in pertinent part follows:
(C) The Company shall refund to each of its customers the revenues collected by it under the rate schedules in effect under bond, plus interest at the rate allowed by law. Such refund shall be paid by check.
(D) Within thirty (30) days after completion of its aforesaid refunds, the Company shall file its certificate of compliance stating that all refunds have been made and showing the amounts refunded by type of service. Upon the filing of such certificate, and the approval thereof by the Commission, the principal and surety on their refund bond heretofore filed by the Company shall be discharged.
This accords with Mississippi Code Annotated, Section 77-3-39 (1972), in pertinent part.
REVERSED, RENDERED AND REMANDED TO THE PUBLIC SERVICE COMMISSION.
WALKER, P.J., and PRATHER, ROBERTSON and ANDERSON, JJ., dissent.
WALKER, Presiding Justice, dissenting:
I feel compelled to dissent from the holding of the majority that the Chancery Court of Hinds County, Honorable Joe G. Moss presiding, incorrectly held that the order of the Mississippi Public Service Commission dated September 8, 1982, which denied a rate increase to South Central Bell Telephone Company was "contrary to the manifest weight of the evidence and for that reason must be reversed and remanded to the Public Service Commission."
The majority opinion states:
We carefully have studied the chancellor's opinion and agree with appellants that the basic issues were not properly considered or determined by the chancellor. The first and foremost serious error was his finding of fact that "The rate base was found to be $909,568,666 (sic $909,569,666)." With deference, this is not accurate. As we heretofore have seen, the commission did not find any rate base whatever, but on the other hand, found that under this essential element and others, the company did not meet its burden of proof. The chancellor obviously followed the contention of appellee *1141 that the rate base in the amount they were contending for was accepted by the commission because of Dr. Holt's testimony. At no time was this figure found to be accurate... .
In my opinion that statement is contrary to the evidence as found in the fourteen-volume record of this case covering in excess of 2,000 pages of testimony plus an additional twenty-three volumes of exhibits.
On April 6, 1982, the company filed a notice of changes in certain of its rates for telephone service to become effective in thirty days. The proposed rates were designed to produce additional annual revenues of approximately $98,200,000. The commission suspended the proposed rates for the maximum period authorized by law. As authorized by statute, on May 7, 1982, the company placed the major portion ($94,000,000) of the proposed rates into effect under refunding bond.
Thereafter, the commission held public hearings on June 28 and 29, and August 30 and 31 and September 1, 1982.
Pursuant to Public Service Commission order, prior to the public hearings, the company filed extensive written testimony and exhibits.
The Department of Defense intervened on behalf of all federal agencies and formally requested extensive information, which was promptly furnished by the company.
The Mississippi Legal Service Coalition (MLSC) intervened on behalf of "low-in-come" persons and was represented by counsel. The MLSC requested and obtained extensive information from the company.
The Mississippi Attorney General intervened and was represented at all public hearings. The Attorney General requested extensive information and data, which was promptly furnished by the company, and the Attorney General cross examined numerous company witnesses.
These various requests included information with respect to all aspects of the financial condition of South Central Bell Telephone Company.
The Public Service Commission engaged the services of two experienced public utility consultants, Dr. John Legler and Dr. Robert N. Holt. These consultants, in connection with the regular staff of the Public Service Commission, conducted an examination of the company's operations and requested voluminous information in addition to the information contained in the company's evidence. The company complied with all such requests.
The Public Service Commission acknowledges in its present brief, that the telephone company presented extensive evidence covering all relevant aspects of its operations, including accounting practices, rate schedules, inter-corporate relationships with the Bell system, revenues, expenses, taxes, rate base, rate design, cost of debt capital, cost of equity capital, capital structure, and overall required fair rate of return.
At no time did a single witness for any of the opponents to the rate increase, including the Public Service Commission experts, members or attorneys, question the propriety of the method by which the company's suggested rate base of $924,178,000 was reached, except that the Public Service Commission expert, Dr. Holt, recommended certain adjustments to this figure which had the effect of reducing the rate base to $909,569,666. In its final order, the commission adopted all of Dr. Holt's adjustments that resulted in reducing the rate base without further questioning its accuracy. In fact, on redirect examination of Dr. Holt (Record P. 975-981), counsel for the Public Service Commission introduced into evidence an exhibit that had been prepared by one of their experts, Dr. Holt, which showed the adjusted rate base recommended by Dr. Holt to be $909,569,666.
Further, the Public Service Commission made a finding of fact that a return of 11.85% on the adjusted rate base was necessary to yield a fair rate of return to the telephone company. Therefore, using *1142 these figures, i.e., figures placed into evidence by the company's own experts, Dr. Holt and Dr. Legler, it is evident that the company demonstrated that it needs and is entitled to receive additional revenues of at least $61,000,000. [See Chart attached hereto as Exhibit "A".] Once the Mississippi Public Service Commission found that the 11.85% rate of return was necessary in order to yield a fair rate of return on the adjusted rate base now accepted by all of the parties to this lawsuit, then anything less than that would be confiscatory.
The rule established by the United States Supreme Court was succinctly stated in Alabama P.S.C. v. Southern Bell Tel. & Tel. Co., 253 Ala. 1, 42 So.2d 655, 662-63 (1949):
We have not reached a point where it is well to consider and define the meaning of "confiscation" in order that our inquiry may be understood. In this consideration we should remember the principle that the property of a public utility, although devoted to the public service and impressed with a public interest, is still private property. Neither the property nor its use can be taken for a compulsory price which falls below the measure of fair and just compensation. In the case of Board of Public Utility Commissioners v. New York Telephone Company, 271 U.S. 23, 32, 46 S.Ct. 363, 366, 70 L.Ed. 808, 812, the Supreme Court of the United States said:
"The just compensation safeguarded to the utility by the Fourteenth Amendment is a reasonable return on the value of the property used at the time that it is being used for the public service, and rates not sufficient to yield that return are confiscatory. * * *."
Simple mathematical computations demonstrate that the company's net operating income of $76,231,786 (as established by Dr. Legler, one of the Public Service Commission's experts) available under the old rates would amount to a return of only 8.38%, far below the required 11.85% required to yield a fair return to the telephone company. It is evident, therefore, that a return of only 8.38% is confiscatory and violative of the United States Constitution.
If the Public Service Commission was not satisfied with the rate design, after determining the percentage (11.85%) of the adjusted rate base, necessary to yield a fair return, then it should have utilized the authority granted it under Mississippi Code Annotated section 77-3-39(5) (Supp. 1984) which provides:
If, after such hearing, the commission shall find any such rate or rates to be unjust, unreasonable, or unreasonably discriminatory, or in anywise in violation of the law, the same shall be set aside, and the commission shall determine and fix by order such rate or rates as will yield a fair rate of return to the public utility for furnishing service to the public and shall make and file its conclusions and findings of fact supporting such order... . (Emphasis added).
This the commission failed to do.
By reversing the order of the chancery court, it is apparent that the majority opinion as well as the Mississippi Public Service Commission overlooked the testimony of the commission's own expert witnesses who adjusted the telephone company's figures and arrived at their recommended rate base and recommended the percentage (11.85%) to be applied to that in order to provide the telephone company a fair rate of return that would not be confiscatory and unlawful. See Mississippi Public Service v. Mississippi Power Company, 337 So.2d 936, 939 (Miss. 1976).
The availability of good telephone service is absolutely necessary to the prosperity of this State and the welfare of the citizens, but cannot be provided unless adequate revenues are allowed the telephone company by and through a fair rate of return on its investment.
In my opinion, the judgment of the chancery court holding that the Public Service Commission's order denying any rate increase *1143 was contrary to the overwhelming weight of the evidence and should be affirmed, and this matter remanded to the Public Service Commission in accordance therewith.
PRATHER and ROBERTSON, JJ., join this dissent.

 EXHIBIT "A"
 SOUTH CENTRAL BELL
 Rate Base Income Available
 Per Company Per Company
 (with Deferred
 Taxes and ITC=
 $924,178,000 $71,857,000
Proposed Adjustments:
1. Consolidated Tax Savings - + 935,358
2. Excess Deferred Taxes + 644,666 + 644,666
3. IDC - + 2,945,329
4. Customer Deposits - 3,908,000 - 150,567
5. Pre-1971 ITC - 1,469,000 -
6. Working Capital - 9,876,000 -
 _____________ ____________________
Adjusted Rate Base $909,569,666 Adjusted $76,231,786
 Net Income
 Available
Revenue Requirement:
 Rate Base X 11.85%
 909,569,666 X .1185 = 107,784,005
 Income Available 76,231,786
 ___________
 Income Deficiency 31,552,219
 Tax Factor .515197
 ___________
 Revenue Required 61,243,017
 ===========

NOTES
[1] The statute under which SCB placed into effect its rate increase under bond has been repealed and replaced pursuant to Chapter 467, Laws of 1983, effective April 6, 1983.